88 P.3d 417 (2004)
Mark WEBB, Appellant,
v.
NEUROEDUCATION INC., P.C., Defendant,
Kimberly Chupurdia Ph.D., Respondent.
No. 21754-0-III.
Court of Appeals of Washington, Division 3, Panel Eight.
April 22, 2004.
*418 Kathleen H. Paukert, Paukert & Sherman PLLC, Spokane, WA, for Appellant.
Everett B. Coulter, Mark A. Wheeler, Spokane, WA, for Respondent.
BROWN, J.
Mark Webb sued psychologist Kimberly Chupurdia for negligently implanting and developing false memories of sexual abuse in his son. The trial court granted summary judgment dismissal on timeliness and legal duty issues. We hold the suit was not barred by the statute of limitations because material facts remain in issue regarding discovery of the alleged harm. Further, as a matter of law, we conclude Mr. Webb properly alleged a legal duty. Accordingly, we reverse.

FACTS
John Doe Webb was four years old in 1989 when his parents, Mark Webb and Susan Webb Ellis, divorced. The dissolution proceedings were bitter, and visitation issues were contentious. Both parents were awarded residential time with the child.
On April 15, 1997, Ms. Ellis took John Doe to Dr. Kimberly Chupurdia for counseling. The next day, April 16, 1997, Dr. Chupurdia reported to Whitman County Child Protective Services (CPS) that John Doe had disclosed his father had sexually abused him since he was seven or eight years old. Dr. Chupurdia filed a report with the Spokane Police Department. On July 28, 1997, the Spokane County Sheriff's Department notified Mr. Webb it was investigating allegations he had sexually abused John Doe. Mr. Webb's last contact with his son was in June 1997. He tried to talk to Dr. Chupurdia in 1997, but she refused to communicate with him.
After interviewing John Doe, CPS concluded further investigation was unwarranted. The sheriff's investigation also was abandoned for lack of corroborating evidence. No official action was ever taken against Mr. Webb.
In 1998, both parents sought parenting plan modifications. Asking for a show cause hearing, Mr. Webb asserted the sexual abuse allegations were unfounded and arose solely from Ms. Ellis's paranoia and her own suggestions to John Doe for the purpose of alienating him from his father. Ms. Ellis sought to terminate Mr. Webb's visitation rights. Dr. Chupurdia filed a declaration supporting Ms. Ellis and recommended terminating all visitations between John Doe and any member of his paternal family.
In a responding declaration filed November 18, 1998, regarding the declaration of Susan Ellis, Mr. Webb stated: "I believe that [John Doe] has been coached and coaxed into fear and that Dr. Chupurdia contributed to that fear." Clerk's Papers (CP) at 277. In the same responding declaration, but regarding the declaration of Dr. Chupurdia, Mr. Webb denied any knowledge of what John Doe or Susan Ellis told Dr. Chupurdia, and pointed to Susan Ellis as likely misinforming Dr. Chupurdia. Mr. Webb stated, "I very strongly believe" or "I believe" when supposing *419 Ms. Ellis had given misinformation to Dr. Chupurdia. CP at 275. Mr. Webb was "curious" why Dr. Chupurdia would not talk to him, "curious" about what case history was available to her, and "curious" why Dr. Chupurdia was so willing to accept the history given by Susan Ellis. CP at 276.
In December 1998, the court appointed a guardian ad litem (GAL) for John Doe with instructions to prepare a report. While preparing his report, the GAL asked for the appointment of a repressed memory expert to review Dr. Chupurdia's records. The court ordered an evaluation by psychologist Paul Wert, who issued a report in July 1999 most decidedly favorable to the father.
The GAL completed an exhaustive investigation and finally issued his 112-page report on October 7, 1999. Mr. Webb received the guardian's report on October 8, 1999. The GAL opined John Doe's alleged recovered memories of abuse were implanted through the suggestions of Susan Ellis and reinforced through counseling with Dr. Chupurdia. The report contained excerpts from Dr. Chupurdia's treatment records, including her evaluation methods. According to Mr. Webb, he first learned from the GAL report that Ms. Ellis had been present during John Doe's sessions with Dr. Chupurdia, and that she and Dr. Chupurdia had prepared notes for John Doe to use during interviews with investigators.
On November 26, 2001, Mr. Webb filed a damages suit against Dr. Chupurdia under chapter 7.70 RCW. Mr. Webb alleged multiple reasons why Dr. Chupurdia's treatment was negligent and breached her professional standard of care, including failing to properly diagnose and treat, misdirecting therapy to recover false memory, misusing methods, implementing and reinforcing false memories, failing to recognize falsely implanted memories, failing to review previous counseling records, and recommending and facilitating the alienation of father and son. Mr. Webb alleged John Doe's treatment with Dr. Chupurdia continued until approximately November 11, 1999.
Dr. Chupurdia moved for summary judgment. The court dismissed the action on two grounds. The court rejected Mr. Webb's factual assertion that he first discovered the alleged malpractice when he received the GAL's report on October 7, 1999. The court decided as a matter of law that Mr. Webb's November 18, 1998 declaration showed he knew or should have known the elements of a cause of action on that date. The court found no genuine issues of material fact. Accordingly, the court concluded the statute of limitations ran on November 18, 2001, a week before Mr. Webb filed. Further, the court concluded Mr. Webb could not prove negligence as a matter of law because Dr. Chupurdia owed him no duty of care. The trial court then dismissed Mr. Webb's suit with prejudice. Mr. Webb appealed.

ANALYSIS

A. Statute of Limitations
The issue is whether the trial court erred in concluding the action was time barred and dismissing Mr. Webb's suit on summary judgment.
In reviewing a summary judgment order, we engage in the same inquiry as the trial court and consider the evidence and all reasonable inferences from the evidence in a light most favorable to the nonmoving party. Miller v. Jacoby, 145 Wash.2d 65, 71, 33 P.3d 68 (2001).
We do not weigh evidence or resolve factual disputes. Babcock v. State, 116 Wash.2d 596, 598-99, 809 P.2d 143 (1991). Summary dismissal under a statute of limitations should be granted solely when the pleadings, depositions, interrogatories, admissions and affidavits in the record demonstrate that there is no genuine issue of material fact as to when the statutory period commenced. CR 56(c); Olson v. Siverling, 52 Wash.App. 221, 224, 758 P.2d 991 (1988). The moving party must establish the absence of any material issue of fact. Babcock, 116 Wash.2d at 598-99, 809 P.2d 143. Dismissal must be denied if the plaintiff can establish a right of recovery under any provable set of facts. Judy v. Hanford Envtl. Health Found., 106 Wash.App. 26, 33-34, 22 P.3d 810 (2001). The question of when the elements of a cause of action should have been discovered to begin the running of the statute of limitations *420 is a question of fact. Green v. A.P.C., 136 Wash.2d 87, 100, 960 P.2d 912 (1998).
The governing limitations statute for medical malpractice is RCW 4.16.350. When a complaint alleges a discrete or isolated negligent act, any civil action for damages for injury occurring as a result of health care must be filed "within three years of the act or omission alleged to have caused the injury" or within one year of the time the patient or his representative "discovered or reasonably should have discovered" that the injury was caused by the act or omission, whichever is later. RCW 4.16.350; Winbun v. Moore, 143 Wash.2d 206, 214, 18 P.3d 576 (2001).
When negligence over an entire course of treatment is alleged, rather than discrete acts, the filing deadline is three years after either the end of treatment or the date the plaintiff discovered or reasonably should have discovered the negligence, whichever is earlier. Caughell v. Group Health Co-op., 124 Wash.2d 217, 236-37, 876 P.2d 898 (1994). Knowledge of the injury alone is insufficient. Winbun, 143 Wash.2d at 218, 18 P.3d 576. Specific negligent acts or omissions by the health care provider must be known, requiring access to the relevant medical records. Id.
Mr. Webb alleged negligence over the entire course of treatment, which ended about November 11, 1999. If treatment ended on November 11, 1999, his November 26, 2001 filing was well within the three-year filing period.
A plaintiff has no duty to seek out evidence of medical negligence if another "facially logical explanation" for the injury exists. Id. at 219-20, 18 P.3d 576. In Winbun, a patient sued a family physician, an emergency room physician, and the hospital. More than three years later, she joined the hospital attending physician. The court denied this doctor's motion for summary judgment, citing Lo v. Honda Motor Co., 73 Wash.App. 448, 869 P.2d 1114 (1994). In Lo, a mother sued Honda Motor Company, for injuries to her child. Meanwhile, the limitations period ran with respect to negligent medical treatment. The court declined to find the mother had a duty as a matter of law to inquire specifically about the possibility of medical malpractice when there was "another facially logical explanation" for the injury. Lo, 73 Wash.App. at 456, 869 P.2d 1114.
The parties dispute when Mr. Webb should have known of Dr. Chupurdia's alleged malpractice. Mr. Webb argues he first discovered Dr. Chupurdia's negligent conduct in October 1999 after receiving the GAL report. Before that time, he attributed his difficulties solely to Ms. Ellis. Dr. Chupurdia argues Mr. Webb must certainly have discovered the alleged malpractice by November 18, 1998 when he expressed similar beliefs in his show cause affidavit. Given the lack of facts available to Mr. Webb in November 1998 as shown in this record, we consider his belief allegations as necessarily speculative and conclusory. Viewing the facts most favorably to Mr. Webb, only when he acquired the information contained in the GAL report did he have a factual basis for his opinions and grounds for his complaint.
Moreover, believing Dr. Chupurdia "contributed" to John Doe's fear is ambiguous, especially considering Mr. Webb's "I believe" statement was made in response to Ms. Ellis's declaration, not that of Dr. Chupurdia. When responding to Dr. Chupurdia's declaration, the record shows Mr. Webb used the term "believe" multiple times, to guess at things he clearly could not know. For example, Mr. Webb related he believed Ms. Ellis gave misinformation to Dr. Chupurdia by giving a slanted history, but could not know about that because, viewing the facts most favorably to Mr. Webb as we must, Dr. Chupurdia would not talk to him. Dr. Chupurdia misses the point by arguing Mr. Webb was always free to speak to her. And she contradictorily concedes she refused to provide information or medical records on the grounds of patient confidentiality while at the same time allowing Ms. Ellis's participation in the therapy sessions.
The record shows Mr. Webb was "curious" about many things connected to Dr. Chupurdia's treatment, and proposed his beliefs as mere speculation and supposition ungrounded by facts. Based on this record, we cannot conclude reasonable minds could reach but one conclusion regarding the disputed discovery *421 facts. Therefore, material facts remain in dispute for a jury to decide.
Further, the parties dispute whether Dr. Chupurdia withheld information from which Mr. Webb might have discovered the extent of her alleged involvement in bringing about his injuries. A party intentionally concealing information from which a cause of action could be discovered may not invoke statutes of limitation. The operation of RCW 4.16.350 is tolled indefinitely. Doe v. Finch, 133 Wash.2d 96, 98, 942 P.2d 359 (1997).
Dr. Chupurdia contends a party who lacks conclusive evidence of negligence must file suit and invoke the civil discovery rules to force disclosure of information not otherwise available. Beard v. King County, 76 Wash. App. 863, 868, 889 P.2d 501 (1995). This is the so-called "shoot first, ask questions later" litigation style, rejected by Washington courts. The rule now is that no action should be filed until specific acts or omissions can be attributed to a particular defendant. Filing on questionable grounds in the hope of using the discovery rules to supply the missing facts is contrary to CR 11. Winbun, 143 Wash.2d at 221-22, 18 P.3d 576.
Relying on Olson v. Siverling, 52 Wash. App. 221, 228, 758 P.2d 991 (1988), Dr. Chupurdia argues Mr. Webb was immediately on notice that her evaluation was wrong when she made the abuse report. As noted above, Mr. Webb is entitled to have a jury sort out whether he had a factual basis for a complaint before he received the medical records and the GAL's report.
In sum, genuine issues of material fact remain in dispute precluding summary judgment on the timeliness issue. The trial court erred in concluding the statute of limitations applied to preclude Mr. Webb's suit.

B. Legal Duty
The issue is whether the trial court erred in deciding Mr. Webb failed to state a cause of action for medical negligence because Dr. Chupurdia did not owe a legal duty to him.
Legal duty is a question of law which we review de novo. Branom v. State, 94 Wash.App. 964, 968, 974 P.2d 335 (1999). It is well settled that, in a claim of negligent treatment, the plaintiff need not be the patient. Kaiser v. Suburban Transp. Sys., 65 Wash.2d 461, 398 P.2d 14 (1965); Branom, 94 Wash.App. at 970, 974 P.2d 335. Specifically, a parent who is injured as the result of the negligent medical treatment of his child has a cause of action under RCW 7.70.030(1). Branom, 94 Wash.App. at 970, 974 P.2d 335.
Every action for damages for injury resulting from health care is governed by chapter 7.70 RCW. RCW 7.70.010; Branom, 94 Wash.App. at 969, 974 P.2d 335. Parents injured by negligent care of their children have a cause of action under RCW 7.70.030(1). The statute distinguishes between an action for negligent treatment under RCW 7.70.030(1), and one for failure to obtain informed consent under RCW 7.70.030(2). The latter can accrue solely to a patient. RCW 7.70.030(2); Branom, 94 Wash.App. at 971, 974 P.2d 335. By contrast, a non-patient can state a cause of action for negligent treatment by showing that his "injury resulted from the failure of a health care provider to follow the accepted standard of care." RCW 7.70.030(1).
The statutory elements are "particularized" expressions of the four common law negligence elements of duty, breach, injury, and proximate cause. Caughell v. Group Health Coop., 124 Wash.2d 217, 233, 876 P.2d 898 (1994). To establish a breach of the accepted standard of care, the plaintiff must prove that a health care provider (1) "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession" acting in the same or similar circumstances; and (2) that "[s]uch failure was a proximate cause of the injury complained of." RCW 7.70.040; Judy v. Hanford Envtl. Health Found., 106 Wash.App. 26, 38, 22 P.3d 810 (2001).
Recent decisions cited for the proposition that a prima facie case for medical negligence under RCW 7.70.010 requires a separate showing of duty, breach, causation, and damages are distinguishable. See, e.g., Colwell v. Holy Family Hosp., 104 Wash.App. 606, 611, 15 P.3d 210 (2001); Eelbode v. Chec *422 Med. Ctrs., Inc., 97 Wash.App. 462, 984 P.2d 436 (1999). These decisions do not address the duty issue in the medical malpractice context. Moreover, as authority for the statutory requirement of a threshold showing of duty, both Colwell and Eelbode cite to Pedroza v. Bryant, 101 Wash.2d 226, 677 P.2d 166 (1984). But Pedroza is not a chapter 7.70 RCW case either. The Pedroza plaintiff sued a hospital under a theory of common law corporate negligence. Pedroza, 101 Wash.2d at 228, 677 P.2d 166. Likewise, Hansen v. Washington Natural Gas Co., 95 Wash.2d 773, 632 P.2d 504 (1981), also cited in Colwell, was a common law negligence action brought by a pedestrian to recover for injuries sustained while jaywalking.
A plaintiff states a cause of action for damages by establishing that "injury resulted" from "the failure of the health care provider to follow the accepted standard of care." RCW 7.70.040(1). The plain language defeats the argument that chapter 7.70 RCW incorporated the common law elements of negligence without modification. In enacting chapter 7.70 RCW, the legislature modified both the substantive and the procedural elements of the common law negligence cause of action in the health care context. Branom, 94 Wash.App. at 968, 974 P.2d 335. See also Hall v. Sacred Heart Med. Ctr., 100 Wash.App. 53, 59, 995 P.2d 621 (2000) (expert testimony rules modified in health care context).
Three questions are before the court in a medical malpractice case: (1) What is the accepted standard of care for the particular medical treatment at issue? (2) Did the health care professional meet that standard of care? (3) Did the failure to meet the standard proximately cause the plaintiff's injury? This was the approach taken by the court in Kaiser.
Our decision in Judy v. Hanford Environmental Health Foundation does not require a different result. The gist of our holding in that case is that a doctor performing an employment capacity evaluation on behalf of the employer is not providing "health care" to the employee. Judy, 106 Wash.App. at 33-34, 22 P.3d 810.
Dr. Chupurdia appropriately did not assert a statutory immunity defense. The child abuse reporting statute, RCW 26.44.060, immunizes those who report suspected child abuse to the authorities from suits based on adverse consequences of reporting. But RCW 26.44.060 does not provide immunity from negligent treatment or investigation giving rise to the report. Dunning v. Pacerelli, 63 Wash.App. 232, 240, 818 P.2d 34 (1991) (recognizing a distinction between reporting and investigating allegations of child sexual abuse). See also Caryl S. v. Child & Adolescent Treatment Servs., Inc., 161 Misc.2d 563, 567, 614 N.Y.S.2d 661 (1994) ("gravamen of action is not communication of opinion but negligence in reaching that opinion").
Neither do we address Dr. Chupurdia's "special relationship" or Mr. Webb's "field of danger" arguments. These doctrines are helpful in the context of defendants who fail to protect plaintiffs from intentional criminal acts by third parties. They are not relevant in the negligence context. See, e.g., C.J.C. v. Corp. of the Catholic Bishop of Yakima, 138 Wash.2d 699, 721, 985 P.2d 262 (1999) (church's duty to parents of victims of predatory priests); Petersen v. State, 100 Wash.2d 421, 671 P.2d 230 (1983) (psychiatrist's duty to third parties injured by intentional acts of known dangerous patient if third party is within "field of danger"). Petersen, 100 Wash.2d at 426-28, 671 P.2d 230. Mr. Webb does not allege intentional harm by a dangerous agent or patient of Dr. Chupurdia's. He alleges negligence by the doctor herself.
Our legislature has articulated a clear policy on the issue of a provider's duty of care relative to parents and their children in other contexts. A parent is within the class of persons foreseeably harmed by negligent investigation into allegations of child abuse by state agencies. The bond between parent and child is "of paramount importance and any intervention into the life of a child is also an intervention into the life of the parent[.]" RCW 26.44.010; Tyner v. Dep't of Soc. & Health Servs., 92 Wash.App. 504, 512, 963 P.2d 215 (1998), rev'd on other grounds, 141 Wash.2d 68, 1 P.3d 1148 (2000). Like Dr. Chupurdia here, the State argued in Tyner *423 that its primary mission of protecting children would be damaged by fear of potential liability. Tyner, 92 Wash.App. at 512, 963 P.2d 215. The court rejected this argument, holding that, until the report was confirmed or disproved, a duty was owed to the parent as well as the child. Tyner, 92 Wash.App. at 512, 963 P.2d 215.
Possibly lacking a malpractice statute like Washington's, other jurisdictions have examined whether a duty is owed to third parties in the mental health malpractice context. These courts balance the interests of society in protecting children and the burden on therapists of imposing liability against the likelihood of the harm to parents and, in some cases, the relationship between the plaintiff and defendant.
The majority hold therapists immune from liability on the theory that every investigation of suspected abuse bears an inherent risk of a wrong diagnosis and, thus, harm to the accused parent is highly foreseeable. These courts take the view that the threat of liability for negligence would seriously impair the ability of psychologists to evaluate children's claims of abuse and the public's interest in protecting children outweighs the public's interest in protecting parents. See, e.g., Doe v. McKay, 183 Ill.2d 272, 233 Ill.Dec. 310, 700 N.E.2d 1018, 1023-24 (1998); Williams v. O'Brien, 140 N.H. 595, 669 A.2d 810, 813 (1995); Bird v. W.C.W., 770 S.W.2d 870 (Tex.1994).
Other jurisdictions hold that negligent mental health professionals owe a legal duty to accused parents, reasoning that society's interest in manufacturing false memories and negligent accusations of parental child sexual abuse is slight. Further, the burden of due care placed upon the therapist to perform according to the accepted standard in such cases is no greater than the duty imposed on every health professional. Moreover, the injury to a parent who is falsely accused is incalculable and highly foreseeable unless the professional standard of knowledge, training, skill, and care is maintained. See, e.g., Sawyer v. Midelfort, 227 Wis.2d 124, 595 N.W.2d 423 (1999); Montoya v. Bebensee, 761 P.2d 285, 288-89 (Colo.Ct.App.1988). The likelihood of harm is magnified when the accused is the patient's father, and when the therapist lacks appropriate qualifications or uses techniques not generally accepted in the mental health community. Hungerford v. Jones, 143 N.H. 208, 722 A.2d 478 (1998).
These decisions reflect the view expressed by our own Supreme Court that a child's father is not a "third party" in the accepted sense, and that ineptly handled charges of sexual abuse leveled against a parent "strike at the core of a parent's basic emotional security" and provide "ample justification for the imposition of liability." Tyner, 141 Wash.2d at 80, 1 P.3d 1148. The Tyner court saw no reason not to include parents falsely accused as the result of ineptly handled sexual abuse investigations in the class of persons owed a statutory duty of care by social workers. Tyner, 141 Wash.2d at 82, 1 P.3d 1148.
Dr. Chupurdia attempts to distinguish Tyner on the basis that social workers have a statutory duty to investigate and psychologists do not. But she does not explain why the Tyner reasoning should not apply equally to mental health professionals whose evaluations fall below the prevailing professional standard of skill and learning. To the extent Dr. Chupurdia argues policy reasons support dismissal on this issue, we disagree. Washington law imposes a duty upon mental health professionals to perform according to the standards of care expected of every health professional. If immunity from liability is to be conferred upon therapists for failing to adhere to a professional standard of care in cases of alleged child sexual abuse, it is for the legislature to confer, not the courts.
In sum, Mr. Webb properly alleged Dr. Chupurdia, a health care provider, failed to follow the accepted standard of professional care for evaluating and treating child sexual abuse and that this failure caused injury to him. We conclude Mr. Webb stated a cause of action as a matter of law.
Reversed.
I CONCUR: KURTZ, J.
*424 SWEENEY, A.C.J. (dissenting).
A medical malpractice plaintiff need not be certain that all elements of a cause of action can be established. He need only discover some information about each element of a "possible cause of action." Olson v. Siverling, 52 Wash.App. 221, 228, 758 P.2d 991 (1988). I agree with the trial judge the material facts here are not in dispute.
On April 15, 1997, Dr. Kimberly Chupurdia began counseling John Doe.
On April 16, 1997, Dr. Chupurdia reported alleged sexual abuse to Child Protective Services.
Since June of 1997, Mark Webb has had no contact with his son. And also in July of 1997, the sheriff's department notified Mr. Webb that he was being investigated for allegations of sexual abuse of his son.
On November 18, 1998, as part of a custody battle, Mr. Webb filed an affidavit which included the following statement: "I believe that [John Doe] has been coached and coaxed into fear and that Dr. Chupurdia contributed to that fear." Clerk's Papers at 277. At all times, Mr. Webb knew that he had not molested his child. Those material facts are undisputed and put Mr. Webb on notice of the potential for the claim he now asserts against Dr. Chupurdia. The relevant statute of limitation then should have expired at the latest in 1999. This suit was filed on November 26, 2001.
A guardian ad litem's report may well have brought added certainty to the scope and magnitude of the negligent treatment here. But again, a medical malpractice plaintiff need not be certain of all the elements of a cause of action. Here, there was ample factual information upon which Mr. Webb could have prosecuted a claim of medical malpractice against Dr. Chupurdia. I would affirm the trial judge's decision dismissing this complaint.