IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MASOOD ABAWI, an individual, and SHAFIQ ABAWI, an individual, | ) ) ) | No. 80462-6-I |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| KIRAN QURESHI aka KIRAN QUADEER, NASEER QUADEER, and WALQUIRIA GUTIERREZ, | ) ) ) ) ) | |
| Respondents, | ) ) | |
| and | ) ) | |
| SEATTLE CHILDREN'S HOSPITAL, a Washington non-profit corporation, | ) ) ) | |
| Defendant. | ) | |

SMITH, J. — Masood Abawi and his brother, Shafiq, appeal the trial court's summary dismissal of their alienation of affection claims against Kiran Qureshi, Walquiria Gutierrez, and Naseer Quadeer. They contend that the statute of limitations was tolled until March 17, 2015, when Masood's daughter Sabrina reported to Child Protective Services (CPS) that she had been manipulated by Qureshi, Gutierrez, and Quadeer to falsely accuse Shafiq of molesting her.[1] Thus, they argue, the trial court erred by dismissing their claims as time barred.

---

[1] Because Masood, Shafiq, and Sabrina share the last name Abawi, we refer to them by their first names for clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

They further contend that the trial court erred by denying their motion to amend their complaint and to compel discovery.

We hold that because Washington does not recognize a cause of action for alienation of a niece's affections, the trial court did not err by dismissing Shafiq's claims against all three defendants. We also hold that Masood raised a genuine issue of material fact as to whether his alienation of affection claims were timely. Accordingly, the trial court erred by dismissing those claims as time barred.

But because Masood failed to set forth specific facts establishing a prima facie claim against Gutierrez, the trial court did not err inasmuch as it dismissed Masood's claim against Gutierrez. Masood also failed to set forth specific facts establishing that any child support payments he made to Qureshi and Gutierrez were proximately caused by the defendants' conduct. Accordingly, the trial court did not err to the extent it dismissed that element of Masood's claim for damages.

Finally, Masood and Shafiq do not establish that the trial court abused its discretion by denying their motion to amend the complaint and their motion to compel discovery.

We affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

FACTS

In March 2018, Masood and Shafiq sued Masood's two ex-wives, Qureshi

and Gutierrez, and Qureshi's second husband, Quadeer.[2]  According to the verified complaint, Masood and Qureshi were married in 1998 and had a daughter, Sabrina.  The complaint alleged that Masood and Qureshi separated in 2003 because Qureshi was having an affair with Quadeer, Masood's then business partner.  Masood later married Gutierrez, and they had three children together.  Meanwhile, Qureshi married Quadeer.

According to the complaint, "On or about 2010, . . . Qureshi sought to travel to Pakistan with . . . Sabrina," but the court did not permit Qureshi to take Sabrina to Pakistan after Masood objected.  The complaint also alleged that at some point after September 5, 2011, "Qureshi, Quadeer, and Gutierrez began coercing and conditioning . . . Sabrina to fabricate an allegation of abuse against . . . Shafiq."  According to the complaint, Sabrina's allegation caused the family court to "establish[ ] a parenting plan that effectively prevented . . . [Masood] from seeing Sabrina for five years and his other children for any holidays since 2012 as he lived together in a house with his whole family, including Shafiq."  The complaint also alleged that the defendants' actions caused Shafiq to become depressed and suicidal, and caused Masood and Shafiq's mother to suffer a heart attack and "great humiliation in the community."

According to the complaint, "On or about March 17, 2015, Sabrina sent an email plea to CPS that [Qureshi] was abusive towards her, as well [as] providing revelations about how the defendants . . . had brainwashed her to make false

---

[2] Seattle Children's Hospital was also named as a defendant but was later dismissed.  That dismissal is not at issue on appeal, and Seattle Children's Hospital is not a party to this appeal.

allegations about her uncle Shafiq." The complaint alleged that Sabrina began living with Masood and his family three days after Sabrina sent the e-mail to CPS, that Qureshi was convicted of assaulting Sabrina in 2016, and that in October 2017, the parenting plan for Sabrina was modified to reflect Sabrina's changed living situation.

The complaint alleged five causes of action against Qureshi, Quadeer, and Gutierrez: (1) outrage, (2) loss of consortium/alienation of affection, (3) fraud, (4) abuse of process, and (5) negligent infliction of emotional distress. The trial court issued a case scheduling order setting the case for trial on March 11, 2019, with a discovery cutoff date of January 22, 2019.

On May 4, 2018, Qureshi filed a CR 12(b)(6) motion to dismiss all claims against her. She argued that all claims were time barred and that Masood and Shafiq had failed in any event to allege sufficient facts to satisfy each element of their claims. After a hearing, the trial court dismissed all claims against Qureshi as either time barred or for failure to state a claim, except the claim for loss of consortium/alienation of affection. With respect to that remaining claim, the trial court wrote that "the complaint states facts sufficient to support the claim and it should be allowed to proceed." The court also explained that the claim was not time barred because "[a]ssuming . . . that the facts are as claimed by the plaintiff, the claim for alienation of affection/loss of consortium is not barred by the statute of limitations because the statute of limitations was tolled by the discovery rule until March 17, 2015 when Sabrina allegedly disclosed that she had been

4

brainwashed and coached into making false allegations of abuse."

Qureshi moved for reconsideration. In support of her motion, Qureshi filed a copy of a 2017 declaration that Masood had filed in family court in connection with a motion to modify his and Qureshi's parenting plan and child support. In that declaration, Masood attested:

> I want to write about all the false allegations that my family and I have [en]dured although there was good evidence in the past concerning these matters. Back in 2011, [Sn]ohomish County Sheriff's Master Patrol Deputy Robert Rozzano filed a declaration stating [tha]t he thought my daughter had been pressured or manipulated by her mother. . . .
>
>    . . . .
>
>    The false allegations against my brother, as referenced in Deputy Rozzano's report, [c]ompelled me to seek an appeal and review of the parenting plan entered in King County for my [ot]her three children, which, while not limiting my visitation was based in part on false [al]legations made against my brother. It is clear that, to date, several years later no actions or [fi]ndings or charges or anything else has come of these false allegations. They were simply [dr]ummed up by Ms. Qureshi and my ex-wife . . . Gutierrez with the assistance of their [att]orney. This is something that needs to be ultimately clarified for and by the Court and for [th]em to be held accountable for their actions which have harmed my children and my family.
>
>    . . . .
>
>    It also bears noting that I have vigorously sought all these years to advise the courts, the [ps]ychologists, and anyone who would listen about the harmful actions of Ms. Qureshi and Ms. [G]utierrez.

In the declaration of Deputy Robert Rozzano, referred to in Masood's declaration, Deputy Rozzano, who had observed visitations between Masood and Sabrina in 2011, declared that Sabrina was "extremely standoffish" with Masood. Deputy Rozzano declared, "I suspect that Sabrina may be doing this for attention, or that someone may be instructing Sabrina to be standoffish, or a combination of both."

In her motion for reconsideration, Qureshi argued that Masood's 2017

declaration "conclusively demonstrates that he was aware of alleged brainwashing, improper influence, and other 'wrongful interference' in 2011." Thus, she argued, "[f]or purposes of the discovery rule, it is clear that [Masood] had the 'means and opportunity to ascertain that a wrong had been committed' and therefore the statute of limitations should not be tolled."

The trial court denied Qureshi's motion for reconsideration, ruling that the documents Qureshi submitted, even if considered "newly discovered" under CR 59, "do not reflect that [Masood] had evidence to support the more specific claim that his daughter was being coached to make false sexual abuse allegations, nor did he have access to his daughter that might allow him to obtain that evidence."

On February 19, 2019, about a month after the discovery cutoff, Qureshi filed a statement on trial readiness stating that her counsel had not yet been contacted "regarding scheduling witnesses, exchanging exhibits, stipulating to facts, or other normal trial preparations." She also represented to the court that no discovery had taken place, no ER 904 disclosures had been made, no experts had been identified, and no facts had been stipulated. She wrote that she did "not believe trial at this time is a proper use of judicial resources, however counsel is ready for trial should it proceed."

On February 25, 2019, Masood and Shafiq filed a motion, which Quadeer later joined, to amend the case schedule and for a new trial date, citing the fact that Qureshi and Quadeer were involved in a separate case set to begin trial the same day as trial was set to begin in this case. The trial court granted the motion over Qureshi's objection and set a new discovery cutoff date of June 24, 2019,

and a new trial date of August 12, 2019.

On June 28, 2019, Quadeer and Gutierrez filed a motion for summary judgment with regard to the remaining loss of consortium/alienation of affection claim. In her memorandum in support of the motion, Qureshi contended, with regard to loss of consortium, that neither Masood nor Shafiq could maintain a claim because neither was alleging "injury or death of [a] child" as contemplated under RCW 4.24.010.[3] With regard to alienation of affection, Qureshi argued that Masood and Shafiq could not establish a prima facie case because their complaint did not identify the plaintiff harmed, did not identify intentional conduct comprising wrongful interference, did not identify which defendant was liable, did not identify the family relationship at issue, and did not explain how Qureshi "could be considered a third person for purposes of interfering with the familial relationship." Finally, with regard to both claims, Qureshi argued that Masood and Shafiq were required to provide expert testimony regarding their injuries and because they had not identified an expert, they could not establish injury, an essential element of both loss of consortium and alienation of affection.

In her memorandum in support of summary judgment, Gutierrez made similar arguments as those made by Qureshi. She also added a renewed argument that Masood and Shafiq's claims were time barred. In support of her argument, Gutierrez pointed to a 2012 declaration that Masood filed in response

---

[3] RCW 4.24.010(1) provides, "A parent or legal guardian who has regularly contributed to the support of his or her minor child, and a parent or legal guardian who has had significant involvement in the life of an adult child, may maintain or join as a party an action as plaintiff for the injury or death of the child."

to a guardian ad litem (GAL) report in his and Qureshi's custody proceeding. In that declaration, Masood stated, as part of a time line of events: "September 29, 2011. I filed this motion for contempt, because of my inability to see Sabrina. The only reason I could think of for why Sabrina would not see me was that her mother and step-father had been brainwashing her." Gutierrez also pointed to a 2012 family court minute entry stating, "Proceedings/Court's Findings: . . . [Masood] states that the child is lying about everything, and that [Qureshi] is making her say these things." Gutierrez argued that these filings demonstrated that "by their own testimony, Plaintiffs were well aware of all essential elements of the Loss of Consortium/Alienation of Affection claims by 2012, at the latest."

In response to Qureshi and Gutierrez's motion, Masood and Shafiq filed a declaration from Sabrina, who by then was 20 years old. Sabrina declared that when she was about 11 or 12 years old, she "was required to stop seeing [her father] in person, or even having a relationship with him at all, because [her] mother . . . and . . . Quadeer made up several false allegations against [Masood] and his family, and [Sabrina] was forced to repeat these lies." Sabrina stated that Qureshi and Quadeer manipulated her at a young age by stating "disturbing false allegations" to her about Masood and his family and by requiring her to memorize those false allegations and repeat them to other people. Sabrina declared that Qureshi and Quadeer told her "exactly what to say and how to say it to others," including her GAL and therapists. Sabrina declared that Gutierrez, who at one point lived with Qureshi and Quadeer, participated in manipulating

8

her. Sabrina stated that she was instructed to lie about Shafiq on several occasions. For example, Sabrina recalled that Quadeer told Sabrina to tell her therapist that Shafiq had touched her inappropriately, and Qureshi had told her to tell the same lies to a nurse at Children's Hospital. Sabrina declared that Shafiq never molested her or acted inappropriately at any time. She declared that she "stopped seeing [her] father . . . because [her] mom[,] . . . Quadeer, and [her] former stepmother . . . Gutierrez, all pressured [her], made [her] weak and brainwashed [her] at a very young and vulnerable age."

Masood and Shafiq also filed a copy of a 2015 declaration from Quadeer in which he attested that Qureshi "has a long history of forcing people under her influence to make false accusations against others." In his 2015 declaration, Quadeer stated that "as revenge for her first husband refusing to allow [Qureshi] to take Sabrina to Pakistan in 2011, [Qureshi] had Sabrina . . . file a false rape charge against her uncle, Shafiq . . . , which had the effect of limiting the custody visitation of Masood . . . with Sabrina, because Shafiq lived in the same home as Masood."

Masood and Shafiq argued that Sabrina and Quadeer's declarations were sufficient to establish a prima facie case of both loss of consortium and alienation of affection with regard to Sabrina as well as Masood's three children with Gutierrez. Masood and Shafiq also argued that "it is incontrovertible that both the child and her father have suffered grievous psychological harm as well as lasting damage to their relationship." Additionally, Masood and Shafiq argued that Masood "also suffered significant economic harm in the form of years of

9

fraudulently obtained child support."

Three days after filing their opposition to Qureshi and Gutierrez's motion for summary judgment, Masood and Shafiq filed a motion for a default judgment as to Qureshi and to compel discovery from Gutierrez and Quadeer. In their motion, Masood and Shafiq averred that Qureshi and her attorney left her deposition after 15 minutes and that all three defendants had "provided incomplete responses and made sweeping objections to" Masood and Shafiq's discovery requests. That same day, Masood and Shafiq also filed a motion for leave to amend their complaint to add Sabrina as a plaintiff and to add a claim for civil conspiracy. Additionally, Masood filed a damages declaration in which he attested that he paid Qureshi "wrongfully obtained support of Sabrina" in the amount of $41,342.00 and that "as a result of Qureshi's actions," Gutierrez wrongfully obtained support in the amount of $111,141.00. Masood alleged total damages of $280,123.00, including Shafiq's lost income and medical expenses, economic and noneconomic damages, and attorney fees and costs.

On July 26, 2019, the trial court—through a different judge than the judge that heard Qureshi's earlier CR 12(b)(6) motion—granted Quadeer and Gutierrez's motion for summary judgment and dismissed all of Masood and Shafiq's remaining claims against all defendants. In its oral ruling, the trial court explained that "the simplest way to look at this at this point, and the most direct way is to say, the plaintiffs knew that they had claims and did not pursue them timely." The trial court also denied Masood and Shafiq's motion for default judgment and to compel discovery, their motion for leave to amend the

complaint, and a later motion for reconsideration.  Masood and Shafiq appeal.

ANALYSIS

Motion for Summary Judgment

Masood and Shafiq contend that the trial court erred by summarily dismissing their alienation of affection claims.[4]  We agree in part.  Specifically, we conclude that Masood's alienation of affection claims against Qureshi and Quadeer were improperly dismissed.  But the trial court did not err by dismissing Shafiq's alienation of affection claims against all defendants or Masood's alienation of affection claim against Gutierrez.

*Standard of Review*

"[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (second alteration in original) (quoting CR 56(c)).  A defendant may move for summary judgment on the ground that the plaintiff lacks competent evidence to make out a prima facie case.  Young v. Key Pharms., Inc., 112 Wn.2d 216, 225 & n.1, 770 P.2d 182 (1989).  If the defendant shows a lack of evidence, the burden shifts to the plaintiff to "'make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case, and on which [the plaintiff] will bear the burden of proof at trial.'"  Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265

---

[4] On appeal, Masood and Shafiq do not challenge the dismissal of their loss of consortium claims.

(1986)). If the plaintiff fails to do so, summary judgment for the defendant is appropriate. Young, 112 Wn.2d at 225. "We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We may affirm summary judgment on any basis supported by the record. Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

*Dismissal of Alienation of Affection Claims*

As an initial matter, although we have recognized a *parent's* cause of action for alienation of a child's affections, see Strode v. Gleason, 9 Wn. App. 13, 20, 510 P.2d 250 (1973), Shafiq does not allege the alienation of his child's affections. And Washington has not recognized a cause of action for the alienation of a *niece's* affections. Therefore, and although Qureshi and Gutierrez do not raise this issue in their brief before this court, we do so sua sponte and hold that Shafiq's claim fails as a matter of law. Cf. Alverado v. Wash. Pub. Power Supply Sys., 111 Wn.2d 424, 429, 759 P.2d 427 (1988) (appellate court has inherent authority to consider issues not raised by the parties if necessary to reach a proper decision). Therefore, the trial court did not err by dismissing Shafiq's alienation of affection claims against all three defendants.

We turn next to Masood's alienation of affection claims. Masood contends that the trial court erred by dismissing his claims as untimely, and we agree.

A cause of action for alienation of a child's affections is subject to a three-year statute of limitations. Strode, 9 Wn. App. at 21 (citing former RCW 4.16.080

12

(1937)). Although the parties disputed below whether the discovery rule had the effect of tolling the statute in this case, they each assumed that the discovery rule applies, generally, to alienation of affection claims. Therefore, we also assume its applicability.

"Under the discovery rule, a cause of action does not accrue until the plaintiff knows, or through the exercise of due diligence, should have known the essential elements of the cause of action." Price v. State, 96 Wn. App. 604, 613, 980 P.2d 302 (1999). "The action accrues when the plaintiff knows or should know the relevant facts, regardless of whether the plaintiff also knows that these facts establish a legal cause of action." Price, 96 Wn. App. at 613. "Further, the cause of action accrues on the date the plaintiff, through the exercise of due diligence, should have discovered the factual basis for the action, even if actual discovery did not occur until later." Price, 96 Wn. App. at 613.

"To invoke the discovery rule, the plaintiff must show that he or she could not have discovered the relevant facts earlier." Giraud v. Quincy Farm & Chem., 102 Wn. App. 443, 449, 6 P.3d 104 (2000). "Unless the facts are susceptible of only one reasonable interpretation, it is up to the jury to determine whether the plaintiff has met this burden." Giraud, 102 Wn. App. at 450. Viewing the evidence and all reasonable inferences therefrom in the light most favorable to Masood, we conclude that Masood raised a genuine issue of material fact as to when he knew or should have known the factual basis for his alienation of affection claims.

Although not cited by Masood, we find Webb v. Neuroeducation Inc., P.C.,

121 Wn. App. 336, 88 P.3d 417 (2004), instructive. In Webb, John Doe Webb was four years old when his parents divorced. 121 Wn. App. at 340. "The dissolution proceedings were bitter, and visitation issues were contentious." Webb, 121 Wn. App. at 340.

In 1997, Webb's mother took him to Dr. Kimberly Chupurdia for counseling. Webb, 121 Wn. App. at 340. The next day, Dr. Chupurdia reported to CPS that Webb had disclosed that his father had abused him since he was seven or eight years old. Webb, 121 Wn. App. at 340. Webb's father tried to talk to Dr. Chupurdia, but she refused to communicate with him. Webb, 121 Wn. App. at 340. After interviewing Webb, CPS concluded that further investigation was unwarranted, and a sheriff's investigation was also abandoned for lack of corroborating evidence. Webb, 121 Wn. App. at 340.

In 1998, when both parents sought parenting plan modifications, Webb's father filed an affidavit in which he "asserted the sexual abuse allegations were unfounded and arose solely from [the mother]'s paranoia and her own suggestions to [Webb] for the purpose of alienating him from his father." Webb, 121 Wn. App. at 340, 344. Webb's father also declared that he believed that Webb had been "'coached and coaxed into fear and that Dr. Chupurdia contributed to that fear.'" Webb, 121 Wn. App. at 340. Meanwhile, Webb's mother sought to terminate the father's visitation rights, and Dr. Chupurdia filed a declaration supporting that request. Webb, 121 Wn. App. at 340.

The court appointed a GAL for Webb and instructed the GAL to prepare a report. Webb, 121 Wn. App. at 341. In 1999, the GAL issued a report opining

that Webb's memories of abuse "were implanted through the suggestions of [the mother] and reinforced through counseling with Dr. Chupurdia." Webb, 121 Wn. App. at 341.

In 2001, Webb's father sued Dr. Chupurdia for medical negligence, and Dr. Chupurdia moved for summary judgment, arguing that the father's claims were time barred. Webb, 121 Wn. App. at 341-42. The trial court agreed, deciding as a matter of law that the father's 1998 declaration, in which he stated his belief that Dr. Chupurdia had participated in coaxing and coaching Webb, "showed he knew or should have known the elements of a cause of action." Webb, 121 Wn. App. at 342.

We disagreed and reversed, concluding that genuine issues of material fact remained as to the timeliness of the father's lawsuit. Webb, 121 Wn. App. at 345, 351. In doing so, we rejected Dr. Chupurdia's argument that the father's 1998 declaration showed that he "must certainly have discovered the alleged malpractice . . . when he expressed similar beliefs in his [1998] affidavit." Webb, 121 Wn. App. at 344. We explained that "[a] plaintiff has no duty to seek out evidence of medical negligence if another 'facially logical explanation' for the injury exists" and that until receiving the GAL report, the father had "attributed his difficulties solely to [the mother]." Webb, 121 Wn. App. at 343-44 (quoting Winbun v. Moore, 143 Wn.2d 206, 219-20, 18 P.3d 576 (2001)). And "[g]iven the lack of facts available to [the father] in . . . 1998 as shown in this record, we consider his belief allegations as necessarily speculative and conclusory. Viewing the facts most favorably to [the father], only when he acquired the

15

information contained in the GAL report did he have a factual basis for his opinions and grounds for his complaint." Webb, 121 Wn. App. at 344.

We also rejected Dr. Chupurdia's argument that under our decision in Beard v. King County, 76 Wn. App. 863, 889 P.2d 501 (1995), "a party who lacks conclusive evidence of [his claim] must file suit and invoke the civil discovery rules to force disclosure of information not otherwise available." Webb, 121 Wn. App. at 345, see also Beard, 76 Wn. App. at 868 ("An injured claimant who reasonably suspects that a specific wrongful act has occurred . . . has only to file suit within the limitation period and use the civil discovery rules . . . to determine whether the evidence necessary to prove the cause of action is obtainable."). We explained that "[t]his . . . so-called 'shoot first, ask questions later' litigation style [has been] rejected by Washington courts" and that "[t]he rule now is that no action should be filed until specific acts or omissions can be attributed to a particular defendant." Webb, 121 Wn. App. at 345. Indeed, we observed that "[f]iling on questionable grounds in the hope of using the discovery rules to supply the missing facts is contrary to CR 11." Webb, 121 Wn. App. at 345; see also Winbun, 143 Wn.2d at 221-22 (rejecting interpretation of discovery rule that would "tempt[ plaintiffs] . . . to sue first and conduct discovery later").

We explained further that although Webb's father related his beliefs that Dr. Chupurdia was given a "slanted history" by the mother, the father "could not know about that because, viewing the facts most favorably to [him] as we must, Dr. Chupurdia would not talk to him." Webb, 121 Wn. App. at 344. Accordingly, the father's beliefs were "mere speculation and supposition ungrounded by

16

facts." Webb, 121 Wn. App. at 345. Ultimately, we concluded that the father was "entitled to have a jury sort out whether he had a factual basis for a complaint before he received the . . . GAL's report." Webb, 121 Wn. App. at 345.

Although Webb was decided under the statutory discovery rule for medical negligence claims, that rule, like the common law discovery rule, turns on when the plaintiff knew, or through the exercise of due diligence should have known, the factual basis for a cause of action. Webb, 121 Wn. App. at 343; Lo v. Honda Motor Co., 73 Wn. App. 448, 455, 869 P.2d 1114 (1994). And we find Webb's reasoning persuasive here. Like the father in Webb, although Masood strongly suspected that the defendants manipulated Sabrina, Masood could not have known that was the case. And like in Webb, there was another facially logical explanation for Sabrina's allegations—namely, that Sabrina was telling the truth about being abused by Shafiq. In other words, like the father's beliefs in Webb, Masood's beliefs were "necessarily speculative and conclusory." Webb, 121 Wn. App. at 344. So, too, was Deputy Rozzano's suspicion that someone might have been instructing Sabrina to be standoffish with Masood.

Furthermore, viewing the facts most favorably to Masood, he did not learn and could not have learned of the factual basis for the defendants' allegedly wrongful conduct until Sabrina reported it to CPS on March 17, 2015. Specifically, according to Sabrina's declaration, the false allegations against Shafiq that Qureshi and Quadeer forced her to make were repeated in court, in the course of the custody proceedings between Masood and Qureshi. And a reasonable inference from Sabrina's declaration is that Qureshi and Quadeer

17

*knew* that Sabrina's allegations were repeated in court. Yet neither Qureshi nor Quadeer corrected the record. And the record reflects that when Masood attempted to do so, his efforts were held against him by the family court: After Masood filed a declaration defending Shafiq and setting forth his belief that Sabrina's allegations were untrue, a family court minute entry was made indicating that the court was "concerned" about Masood's view that Sabrina was "lying" and that Qureshi was "making her say these things." The minute entry noted Masood's "lack of insight" and that the court was concerned that Masood "w[ould] not even consider that there may be an issue in his household." The entry also described Masood's actions in the dissolution as "vindictive and inappropriate." Given the family court's decidedly negative view of Masood's attempts to bring to light what he suspected as the truth, it is not difficult to imagine how the court—which was then presiding over the question of Sabrina's custody—would have viewed additional efforts to press the issue. In other words, a reasonable juror could find that given the family court's views as reflected in the minute entry, due diligence did not require Masood to press the issue further while still litigating his custody battle with Qureshi. Indeed, given (1) Qureshi and Quadeer's apparent silence in the face of Masood's protestations and (2) Sabrina's testimony that she feared her mother and stepfather enough to repeat her false allegation to a GAL, a nurse, and a therapist, a reasonable juror could also find that pressing the issue would have been futile.

For these reasons, we conclude that a genuine issue of material fact remains with regard to when Masood knew or exercising due diligence should

have known the factual basis for his alienation of affection claim—and, specifically, the elements of that claim that required him to show that the defendants unjustifiably interfered with a parent-child relationship with an intention that the interference result in a loss of affection or family association. See Strode, 9 Wn. App. at 14, 20. Accordingly, the trial court erred by deciding this threshold question of fact as a matter of law and summarily dismissing Masood's alienation of affection claims as time barred. Indeed, Qureshi and Gutierrez do not argue otherwise, contending instead that we should affirm the dismissal based on Masood's failure to establish the existence of a prima facie case. We address this contention next and conclude that Masood established a prima facie case with regard to Qureshi and Quadeer but not with respect to Gutierrez.

To prevail on a claim for alienation of a child's affections, the plaintiff must show (1) "[a]n existing family relationship," (2) "an unjustifiable interference with the relationship between the parent and the child" by a third person, (3) "[a]n intention on the part of the third person that such . . . interference results in a loss of affection or family association," (4) "[a] causal connection between the third parties' conduct and the loss of affection," and (5) "[t]hat such conduct resulted in damages." Strode, 9 Wn. App. at 14-15, 20.

Here, Masood established a prima facie case with regard to each element of his claims against Qureshi and Quadeer. Specifically, it is undisputed that Masood is Sabrina's father and that the two had an existing family relationship, thus satisfying the first element of alienation of affection. And according to

Sabrina's declaration, Qureshi and Quadeer made up false allegations about Masood's family and forced her at a young age to repeat those lies. Sabrina described with particularity an instance when Quadeer instructed her to falsely report to her therapist that Shafiq had touched her inappropriately, and another instance when Qureshi and Quadeer instructed her to tell the same lie to a nurse at Children's Hospital. Sabrina also declared that the result of these lies, which were repeated to her GAL, therapists, and the court, was that Sabrina was "kept away from [her] father for almost 4 years." Viewed in the light most favorable to Masood, Sabrina's allegations in her declaration are sufficient, if proven, to establish the second, third, and fourth elements of Masood's alienation of affection claim.

Finally, with regard to the damages element, to defeat summary judgment, Masood was required to present evidence only of the *fact* of damages caused by the defendants' conduct, not the *amount* of damages. See C 1031 Props., Inc. v. First Am. Title Ins. Co., 175 Wn. App. 27, 34, 301 P.3d 500 (2013) ("A greater degree of certainty is required to prove the *fact* of damages than the *amount* of damages: once it is reasonably certain that the breach caused damages, the fact finder may determine the amount of the damage award by drawing reasonable inferences from reasonably convincing evidence. In other words, damages are questions of fact left for the jury to decide unless reasonable minds could not differ." (citation omitted)). Here, viewing the record in the light most favorable to Masood, he satisfied that threshold.

Specifically, we explained in Strode that a parent who has been wrongfully

deprived of the company of his child may recover compensatory damages for the "mental anguish and distress" associated with the loss of companionship of the child. 9 Wn. App. at 19. Here, Masood alleged in his verified complaint, and Sabrina confirmed in her declaration, that Qureshi and Quadeer's conduct was the reason that Sabrina did not see Masood for a number of years. Masood also alleged that Qureshi and Quadeer's conduct caused him severe emotional distress and, in a later damages declaration, asserted $25,000 in noneconomic damages. Although issues of proof may remain as to the amount of damages, the record, viewed in the light most favorable to Masood, establishes that Masood suffered damage as a result of Qureshi and Quadeer's conduct. Accordingly, we conclude that Masood established a prima facie case, sufficient to survive summary judgment, with regard to his alienation of affection claims against Qureshi and Quadeer.[5]

Masood failed, however, to establish a prima facie case of his claim against Gutierrez. To the extent that Masood's claim against Gutierrez is based

---

[5] Qureshi argued below that summary judgment was proper with regard to Masood's claims because Masood did not "explain how [Qureshi] could be considered a third person for purposes of interfering with the familial relationship." But she does not renew that argument on appeal, and thus, we decline to consider it. Qureshi points out that she made the argument below and asserts that her "original argument in favor of Summary Judgment before the trial court remains on point for purposes of appeal," but we reject Qureshi's apparent attempt to incorporate by reference the arguments that she and Gutierrez made in their briefs below. See Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("[T]rial court briefs cannot be incorporated into appellate briefs by reference."); see also RAP 10.3(a)(6), (b). Furthermore, Qureshi cited no authority, even in her summary judgment briefing below, that supports the proposition that a parent cannot maintain an alienation of affection claim against another parent.

on an alienation of Sabrina's affections, Sabrina made only conclusory allegations in her declaration that Gutierrez participated in Qureshi's brainwashing and manipulation campaign. She declared that she "overheard [Gutierrez] conspiring with [Qureshi] and [Quadeer] to tell lies about my father and his family, and to get me to repeat those lies." But she did not set forth any specific facts from which a reasonable juror could conclude that Gutierrez's conduct caused her to make the false allegations against Shafiq. Rather, it is clear from Sabrina's declaration that Qureshi and Quadeer were the ones who forced her to make the allegations. And to the extent that Masood's claim against Gutierrez is based on an alleged alienation of his three children with Gutierrez, he points to no specific facts in the record to establish a loss of affection or family association with regard to those children—much less that such loss was caused by Gutierrez's conduct.[6] For these reasons, we conclude that the trial court did not err inasmuch as it dismissed Masood's alienation of affection claim against Gutierrez.

---

[6] When he moved for reconsideration of the trial court's summary dismissal of his claims, Masood filed excerpts from his and Gutierrez's 2012 parenting plan and the trial transcript from their dissolution trial. He argued on reconsideration that these documents showed that the family court restricted Masood's visitation with his three youngest children based on Sabrina's false allegations. But these documents were not before the court on summary judgment. And in his opening brief, Masood neither assigns error to the trial court's denial of his motion for reconsideration nor provides argument and citation to authority with regard to the motion for reconsideration. Therefore, we do not consider these additional documents. See RAP 9.12 ("On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court."); RAP 10.3(a)(6) (providing that briefs should contain argument in support of each issue presented for review).

*Causation and Damages*

As a final matter, Qureshi and Gutierrez contend that Masood's claims fail because he did not provide expert testimony to establish "how and when" he was damaged.  But as discussed, Masood put forth sufficient evidence to survive summary judgment with regard to damages, at least insofar as those damages consist of the mental anguish and distress he suffered as a result of the alleged alienation of Sabrina's affections.  And although medical testimony is required to establish emotional distress in medical negligence cases "in which the patient has an extensive and unusual medical history which requires medical evidence to establish causation of her emotional distress," Berger v. Sonneland, 144 Wn.2d 91, 114, 26 P.3d 257 (2001), Qureshi and Gutierrez cite no authority that persuades us that expert testimony is required as a general matter to establish a prima facie case of causation or damages in an alienation of affection case.

We conclude, however, that Masood did fail to establish a prima facie case of causation to the extent that he claims "unwarranted child support payments" to Qureshi and Gutierrez as an element of damages.  Specifically, Masood failed to present any evidence from which a reasonable juror could, without speculating, find that any child support payments he was ordered to make were proximately caused by Qureshi and Quadeer's conduct.  There is no evidence in the record that the family court would have ordered a different child support amount but for Sabrina's allegations.  Furthermore, absent direct evidence that the family court increased child support based on Sabrina's allegations, the extent to which payments were increased because of those

23

allegations would require specialized knowledge and, thus, expert testimony. See ER 701 (providing that lay witness may only provide an opinion on issues not requiring "scientific, technical, or other specialized knowledge"); see also RCW 26.19.075 (setting forth a nonexclusive list of reasons that the family court may decide to deviate from the standard child support calculation). And Masood provided no expert declaration in this regard. For these reasons, we hold that dismissal was proper to the extent that Masood claimed child support payments to Qureshi and Quadeer as an element of damages. See Am. Linen Supply Co. v. Nursing Home Bldg. Corp., 15 Wn. App. 757, 767, 551 P.2d 1038 (1976) (affidavits opposing summary judgment are "required to set forth specific facts disclosing an issue of material fact and conclusionary statements of fact will not suffice"); Miller v. Likins, 109 Wn. App. 140, 145, 34 P.3d 835 (2001) ("[T]o survive summary judgment, the plaintiff's showing of proximate cause must be based on more than mere conjecture or speculation."); Larsen v. Walton Plywood Co., 65 Wn.2d 1, 16, 390 P.2d 677, 396 P.2d 879 (1964) ("[D]amages which are remote and speculative cannot be recovered.").

In short, on remand, should this case go to trial, Masood may recover only for the mental anguish and distress associated with the loss of Sabrina's affections, the amount of which need not be proven by expert testimony (but must be proven by a preponderance of the evidence).

*Conclusion*

The trial court did not err to the extent that it dismissed Shafiq's alienation of affection claims against all three defendants and Masood's alienation of

affection claim against Gutierrez. But genuine issues of material fact remain with regard to when Masood knew or should have known of the factual basis of his claims against Qureshi and Quadeer, and except as discussed above with regard to the child support element of his damages, Masood put forth sufficient evidence to establish a prima facie case of those claims. Accordingly, the trial court erred by dismissing Masood's alienation of affection claims against Qureshi and Quadeer.

<u>Motion for Leave To Amend Complaint</u>

Masood and Shafiq contend that the trial court erred by denying their motion for leave to amend their complaint. We disagree.

Under CR 15(a), once the time periods for amendment as a matter of course have passed, a plaintiff may amend the complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "The touchstone for the denial of a motion to amend is the prejudice such amendment would cause to the nonmoving party." <u>Karlberg v. Otten</u>, 167 Wn. App. 522, 529, 280 P.3d 1123 (2012). "In determining whether prejudice would result, a court can consider potential delay, unfair surprise, or the introduction of remote issues." <u>Karlberg</u>, 167 Wn. App. at 529. "We review a trial court's denial of a motion to amend for an abuse of discretion." <u>Karlberg</u>, 167 Wn. App. at 529. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." <u>In re Marriage of Littlefield</u>, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Here, nearly a month after the discovery cutoff and within four weeks of

trial, Masood and Shafiq moved to amend their complaint to add Sabrina as a plaintiff and to add a claim for civil conspiracy. The trial court did not abuse its discretion by denying the motion.

Specifically, with regard to the proposed civil conspiracy claim, a plaintiff alleging civil conspiracy must prove by clear, cogent, and convincing evidence that "'(1) two or more people combined to accomplish an unlawful purpose or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.'" Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc., 114 Wn. App. 151, 160, 52 P.3d 30 (2002) (quoting All Star Gas, Inc. v. Bechard, 100 Wn. App. 732, 740, 998 P.2d 367 (2000)).[7] Accordingly, given that very little discovery had taken place at the time Masood and Shafiq moved to amend, additional discovery would have been required for Masood and Shafiq to, at the very least, marshal clear, cogent, and convincing evidence that Qureshi, Quadeer, and Gutierrez entered into an agreement to accomplish a conspiracy. And with regard to adding Sabrina as a plaintiff, Masood and Shafiq represented to the court at the June 2018 hearing on Qureshi's CR 12(b)(6) motion that they had considered including Sabrina as a party but decided not to. Permitting them to

---

[7] In their opening brief, Masood and Shafiq omit the second element and suggest that the plaintiff must prove only that "two or more persons combine to accomplish an unlawful purpose or combine to accomplish some purpose not in itself unlawful by unlawful means." But the cases to which they cite confirm that the plaintiff must also prove an agreement among conspirators. See Lewis Pac. Dairymen's Ass'n v. Turner, 50 Wn.2d 762, 772, 314 P.2d 625 (1957); Harrington v. Richeson, 40 Wn.2d 557, 570-71, 245 P.2d 191 (1952); Kietz v. Gold Point Mines, 5 Wn.2d 224, 231, 105 P.2d 71 (1940).

change their minds more than a year later would result in unfair surprise to the defendants, particularly given Masood and Shafiq's acknowledgement below that Sabrina's claims were based on the same set of facts stated in the original complaint.  For these reasons, the trial court did not abuse its discretion by denying Masood and Shafiq's motion to amend the complaint.  See In re Marriage of Tahat, 182 Wn. App. 655, 666, 334 P.3d 1131 (2014) ("The need for additional discovery is sufficient prejudice to deny a motion to amend."); Elliott v. Barnes, 32 Wn. App. 88, 92, 645 P.2d 1136 (1982) ("Undue delay is a proper ground for the denial of a motion for leave to amend."); cf. Wilson v. Horsley, 137 Wn.2d 500, 507, 974 P.2d 316 (1999) (where defendant had been aware of the factual basis for a counterclaim for some time, trial court did not abuse discretion by denying motion to amend answer to add the counterclaim on the eve of trial).

Masood and Shafiq argue for the first time in their reply brief that amendment should have been allowed as a discovery sanction.  But an argument raised for the first time in a reply brief is too late to warrant consideration.  Deutsche Bank Nat'l Trust Co. v. Slotke, 192 Wn. App. 166, 177, 367 P.3d 600 (2016).  Furthermore, Masood and Shafiq do not cite any authority to support the proposition that the trial court abused its discretion by not allowing amendment as a discovery sanction.  Therefore, their argument fails.

### Motion To Compel Discovery

Masood and Shafiq next assign error to the trial court's denial of their motion to compel.  But they do not support this assignment of error with argument or citation to authority in their opening brief, and thus, we decline to

consider it. See Batten v. Abrams, 28 Wn. App. 737, 741, 626 P.2d 984 (1981) (appellate court will not consider assignments of error "not specifically supported by argument or citation of authority").

## Fees on Appeal

All parties request fees on appeal. Masood and Shafiq contend that they are entitled to fees under CR 26, CR 37, and RAP 18.1 "[g]iven the defendants' concealment of their actions, the just application of the discovery rule, and defendants' discovery violations." But Masood and Shafiq cite no authority supporting the proposition that an appellate court can award discovery sanctions under CR 26 and CR 37, which apply to the *superior court*. And in any event, Masood and Shafiq did not prevail with regard to any discovery issues raised on appeal. Therefore, we decline to award them fees on appeal.

Qureshi and Gutierrez argue that they are entitled to fees under RAP 18.9 because Masood and Shafiq's appeal is frivolous. But for reasons already discussed in the course of reversing the trial court's entry of summary judgment in part, this appeal is not frivolous. Cf. In re Recall of Feetham, 149 Wn.2d 860, 872, 72 P.3d 741 (2003) ("An appeal . . . is frivolous if there are '*no debatable issues upon which reasonable minds might differ*, and it is so totally devoid of merit that there was no reasonable possibility' of success." (emphasis added) (internal quotation marks omitted) (quoting Millers Cas. Ins. Co. of Tex. v. Briggs, 100 Wn.2d 9, 15, 665 P.2d 887 (1983))). Accordingly, we decline to award fees to Qureshi and Gutierrez.

Conclusion

We affirm the trial court's denial of Masood and Shafiq's motion to compel and its denial of their motion to amend the complaint. We also affirm the trial court's dismissal of Shafiq's alienation of affection claims against all defendants and Masood's alienation of affection claim against Gutierrez. And, we affirm the trial court inasmuch as it concluded that Masood cannot recover for support payments made to Qureshi and Gutierrez.

We otherwise reverse the trial court's dismissal of Masood's alienation of affection claims against Qureshi and Quadeer. We remand to the trial court for further proceedings consistent with this opinion, including to resolve the threshold question of when Masood knew or exercising due diligence should have known of all essential elements of his alienation of affection claims against Qureshi and Quadeer.

WE CONCUR: