Tammy FORBES and Crin Forbes,
Plaintiffs-Appellants,

v.

Clemens K. STOECKL, D.D.S., d/b/a Stoeckl Family
Dentistry, and XYZ Insurance Company,
Defendants-Respondents.

Court of Appeals

*No. 2006AP1654. Submitted on briefs April 17, 2007.
—Decided May 9, 2007.*

2007 WI App 151

(Also reported in 735 N.W.2d 536.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert N. Meyeroff* of *Robert N. Meyeroff, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *W. Patrick Sullivan* and *Scott J. Thomsen* of *Siesennop & Sullivan* of Milwaukee.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. Tammy Forbes sued Clemens K. Stoeckl,[1] her former dentist, alleging that he treated her negligently over several years and caused permanent damage to her teeth and jaws. The circuit court granted partial summary judgment to Stoeckl, holding that claims based on any treatments occurring more than three years prior to the suit's filing were time-barred. We reverse because Forbes has alleged and supported a claim of continuous negligent treatment. All of the allegedly negligent procedures Forbes com-

---

[1] Tammy Forbes' husband Crin is also a party to this suit, as are Stoeckl Family Dentistry and XYZ Insurance Company. Because the only contested issue on appeal involves Stoeckl's treatment of Tammy Forbes, we will refer to all of the appellants as Forbes and all of the respondents as Stoeckl.

427

plains of were related to Stoeckl's treatment of a jaw condition. Forbes also alleges that the condition was misdiagnosed and, even if the diagnosis was correct, the treatment regimen was inappropriate. Because a series of negligent treatments of the same condition gives rise to a single action, the statute of limitations does not begin to run until the last act of negligence, and the entire action is timely. The circuit court erred in applying the five-year statute of repose found in WIS. STAT. § 893.55(1)(b) (2003–04)[2] to override or modify the continuum doctrine; that statute only bars certain claims based upon a plaintiff's late discovery of injury and has no application to this case.

¶ 2.  Because this case is before us on Stoeckl's summary judgment motion, we take Forbes' version of the facts as true. *See Grams v. Milk Products, Inc.*, 2005 WI 112, ¶ 4, 283 Wis. 2d 511, 699 N.W.2d 167. Forbes was Stoeckl's patient from 1985 until 2001. In 1989, Stoeckl diagnosed Forbes with the condition commonly called TMJ and began treating her with a device worn over her teeth. In 1991, Stoeckl advised Forbes that her teeth were too low, and recommended that she build up her bite using crowns. Stoeckl applied these crowns to sixteen of Forbes' teeth over the next year. Between 1993 and 1999, Stoeckl continued to adjust the crowns, which were attached with temporary cement. According to Forbes' expert, the crowns were too high for the teeth to which they were attached, and so they continued to come loose and fall out during these years. Because the crowns

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. The legislature has since renumbered WIS. STAT. § 893.55(1)(a) and (b) as § 893.55(1m)(a) and (b) (2005–06); the language remains the same. *See* 2005 Wis. Act 183, § 2.

were loose, bacteria and saliva could enter the dentinal[3] portion of the teeth, contributing to the need for root canals.

¶ 3.   In 2000, Stoeckl decided to connect the crowns into four bridges. To anchor the bridges, he performed root canals on eight teeth, placed posts into the teeth, and attached the bridges to the posts. According to Forbes, Stoeckl told her that root canals would be necessary on some healthy teeth. Stoeckl performed the final root canals on September 18, 2001.[4]

¶ 4.   Forbes filed suit on July 7, 2004, alleging that Stoeckl treated her negligently and that he failed to inform her of the risks of the treatment or provide alternatives, and that as a consequence, Forbes suffered extreme pain, suffering and disability and sustained permanent injury to her teeth and jaws. Forbes' expert opined that it was doubtful that Forbes had ever had TMJ, and that the diagnosis of TMJ was negligent. The expert further opined that the treatment plan was "unnecessary, and wholly disproportionate to the problem it was intended to solve." The expert also opined that the root canals were performed negligently and caused tooth decay and gum infection. Stoeckl moved for partial summary judgment on the ground that the three-year statute of limitations had run on any claims based on treatments performed before July 7, 2001. The circuit court granted Stoeckl's motion, and Forbes filed a peti-

_____

[3] The dentin is the hard tissue surrounding the pulp cavity of a tooth and lying under the enamel. *See, e.g.,* THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 533 (2d ed. unabridged 1987).

[4] Stoeckl performed three other root canals on Forbes, but Forbes does not claim that these were related to the TMJ treatment, and so they are not at issue here.

tion for leave to appeal the nonfinal judgment, which we granted.

¶ 5.   Forbes contends on appeal that the three-year statute of limitations found in Wɪs. Sᴛᴀᴛ. § 893.55(1)(a) did not begin to run on any of the alleged malpractice until September 18, 2001, when Stoeckl last treated her. Her argument is that the doctrine of continuous negligent treatment applies to her case. This doctrine, first adopted by our supreme court in *Tamminen v. Aetna Casualty and Surety Co.*, 109 Wis. 2d 536, 327 N.W.2d 55 (1982), states that where the negligent acts of malpractice are continuous, the cause of action is not complete until the last date on which the malpractice occurred. *Id.* at 559. Thus, if an action is timely brought with respect to that last date, the entire course of negligent malpractice is within the court's jurisdiction. *Id.* The question we must answer is whether a "lay person could reasonably conclude that the facts fall within a single unit or occurrence." *Robinson v. Mount Sinai Med. Ctr.*, 137 Wis. 2d 1, 27, 402 N.W.2d 711 (1987). A plaintiff must show four elements to satisfy the doctrine: (1) a continuum of care, (2) a continuum of negligent care, (3) that the care is related to a single condition, and (4) that the precipitating factor in the continuum is the original negligent act. *Id.* at 28–29.

¶ 6.   Stoeckl contends that Forbes fails the first two elements, arguing that there were significant time-gaps between treatments that preclude a showing of a continuum of care or a continuum of negligent care. Forbes points to a five-and-a-half year gap between root canals in 1986 and 1992 and a six-and-a-half year gap between root canals in 1993 and 1999. He cites *Westphal v. E.I. du Pont de Nemours & Co.*, 192 Wis. 2d 347, 531 N.W.2d 386 (Ct. App. 1995), in which we held

430

that there was not continuous negligent treatment where there was a two-year gap between allegedly negligent procedures. *Id.* at 374–75.

■

¶ 7.   The facts of this case are significantly different from those of *Westphal*. *Westphal* involved treatment of the same condition by three different physicians over several years. *Id.* at 357–58. In *Westphal*, we were addressing a summary judgment for a Dr. Litow, *id.* at 358, who had performed only one allegedly negligent procedure on the plaintiff. *Id.* at 375. We rejected the plaintiff's argument that Litow's procedure, combined with subsequent procedures by other doctors, constituted continuous negligent treatment. We recognize that a continuum of negligent treatment can involve more than one actor. *Robinson*, 137 Wis. 2d at 20–21. However, the ultimate question in continuum cases is whether a "lay person could reasonably conclude that the facts fall within a single unit or occurrence." *Id.* at 27. Clearly, the fact that the procedures in *Westphal* were conducted by different doctors over time made it less reasonable to conclude that the facts fell within a single "unit or occurrence." Here, in contrast, we have a series of allegedly negligent procedures all performed by the same dentist and all allegedly a part of that dentist's attempts to treat the TMJ that he had diagnosed. We conclude that this course of treatment meets the first two elements of continuous care and continuous negligent care.[5]

---

[5] We further note that Stoeckl's purported gaps in treatment are problematic on their own. The first one follows a 1986 root canal, which all parties agree was unrelated to the TMJ diagnosis (predating it by three years) and which Forbes has agreed is not at issue in this action. The second gap runs

¶ 8.    Stoeckl next argues that the root canals he performed were not related to a single condition, the third element of the continuum test. He relies heavily on a statement Forbes' expert made at deposition. After the questioner stated that he or she had "[a] couple of questions about endodontics[6] in general" the questioner continued:   "Can we agree that when performing endodontics, a dentist has to evaluate each and every tooth; it's not a generalized condition, but it's a specific condition to each tooth that he or she treats?" The expert answered, "yes." The questioning goes on for several pages to establish the proposition that a dentist must determine the need for a root canal on each tooth individually, regardless of the conditions of other teeth; that is, root canals are not performed based on conditions generalized throughout the mouth, like periodontal disease. Thus, Stoeckl argues that the root canals he performed cannot be "related to a single condition."

¶ 9.    Stoeckl's argument completely ignores the fact that the majority of the root canals at issue here were not intended to treat any sort of disease or condition of the teeth they were performed on. At least some of the teeth allegedly were healthy, and the root

---

between root canals in 1993 and 1999; however, Forbes has alleged that Stoeckl continued to adjust and reattach the crowns he had put in her mouth, and her expert averred that the crowns were ill-fitting and caused infection, leading to later root canals. Because this is Stoeckl's summary judgment motion, we accept these allegations as true. *See Grams v. Milk Products, Inc.*, 2005 WI 112, ¶ 4, 283 Wis. 2d 511, 699 N.W.2d 167.

[6] Endodontics is the branch of dentistry dealing with diseases of the dental pulp, usually by removal of the nerve and other tissue and replacement with a filling material; i.e., root canals. *See* The RANDOM HOUSE DICTIONARY, *supra* note 3, at 642.

canals were performed in order to provide an anchor for the bridges Stoeckl had created. The expert's opinion may be valid in the usual context of endodontics, that is, in the treatment of diseases of the inner pulp of a tooth, but it has absolutely nothing to do with most of the procedures that Stoeckl was performing here. Those procedures were all clearly aimed at treating the TMJ Stoeckl had diagnosed. As for the other root canals, the ones that were performed on diseased teeth, Forbes' expert alleges that they were made necessary by the improper attachment of the crowns, which resulted in bacteria and saliva entering the dentinal area. Of course, each of these root canals was performed because of damage to the particular tooth affected, but the damage to each individual tooth grew out of Stoeckl's use of crowns to treat a single condition: Forbes' diagnosed TMJ.[7] The third element of the continuum test is satisfied.

¶ 10. The final element of the test is that the precipitating factor for the continuum of negligence must be the original negligent act. Forbes' expert opines that Stoeckl was incorrect and negligent in his diagnosis of TMJ and that Forbes has likely never had that condition. Clearly, without this claimed misdiagnosis, the treatment regimen of crowns and root canals would not have occurred. Further, even if the diagnosis was correct, Forbes' expert also opined that the chosen treatment, the crowning of Forbes' teeth, was "unnecessary and wholly disproportionate to the problem." If Forbes' expert is correct, the decision to use this treatment regimen would also qualify as a negligent, precipi-

---

[7] We stress that we are not endorsing Forbes' allegations or the conclusions of her expert, but only accepting them as true for the purposes of deciding summary judgment. *See Grams*, 283 Wis. 2d 511, ¶ 4.

tating factor for the treatments that allegedly followed. Stoeckl only argues that this case is not like *Robinson*, in which a misdiagnosed infection eventually spread and required various radical treatments, resulting in serious brain damage. *Robinson*, 137 Wis. 2d at 5–6. Clearly the medical facts of the case at hand differ from those of *Robinson*, but both cases involve an initial allegedly negligent act that eventually led to further allegedly negligent treatments; both thus satisfy the fourth element of the continuum of negligent treatment doctrine.

¶ 11.   We therefore hold that Forbes' claims constitute a continuum of negligent treatment. The circuit court came to the opposite conclusion without conducting the above analysis because it believed that WIS. STAT. § 893.55(1)(b) served as an absolute bar to any of Forbes' claims arising from treatments occurring more than five years before the action was filed. The circuit court further held that since the original diagnosis and treatment decisions were barred by the five-year statute of repose, there could be no continuum of negligent treatment. Stoeckl urges the same conclusion on us, but as we shall see, § 893.55(1)(b) does not apply to this case.

¶ 12.   WISCONSIN STAT. § 893.55(1) provides two time limits for actions against health care providers.

> [Such actions] shall be commenced within the later of:
>
> (a) Three years from the date of the injury, or
>
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

*Id.*

¶ 13. Stoeckl contends that WIS. STAT. § 893.55(1)(b) means that under no circumstances may an action be commenced more than five years after the act or omission complained of. Thus, even if the continuous negligent treatment doctrine extends the three-year limit in paragraph (a) to cover all of Forbes' treatments (because all of the acts of malpractice amount to one claim that accrued on September 18, 2001), paragraph (b) unconditionally cuts off liability for any malpractice committed more than five years before Forbes filed suit. The trial court agreed with Stoeckl's argument, stating that "there is no case law to indicate that the continuum of negligent treatment doctrine changes the five year statute of repose."

¶ 14. This reading of WIS. STAT. § 893.55(1)(b) is incorrect. The five-year limit in § 893.55(1)(b) applies only to an action "commenced under this paragraph." The word "paragraph" has a specific meaning in the statutes: it is a portion of language "designated by a letter or letters enclosed in parentheses." WIS. STAT. § 35.18(3). Thus, § 893.55(1) is a subsection; § 893.55(1)(a) and § 893.55(1)(b) are its component paragraphs. By its plain meaning, then, the five-year limit in § 893.55(1)(b) comes into play only when a plaintiff attempts to file an action under that paragraph's "discovery rule"; that is, only when a plaintiff claims that, because of a delayed discovery of an injury, he or she is entitled to file an action beyond the three-year time limit in paragraph (a). Since Forbes is claiming to be *within* the three-year time limit in paragraph (a) (as extended by the continuum of negligent treatment rule), the five-year limit has no application whatsoever. Put another way, WIS. STAT. § 893.55(1) sets two time limits and allows the plaintiff

to file so long as *one* of them is unexpired. Forbes filed within the three-year limit, ·as modified by the continuum of negligent treatment doctrine; it is therefore irrelevant whether the same doctrine "changes" the five-year limit.

¶ 15. The above discussion is a condensed version of the explanation given by our supreme court in *Storm v. Legion Insurance Co.*, 2003 WI 120, ¶¶ 19–23, 265 Wis. 2d 169, 665 N.W.2d 353, a case that is virtually identical to this one in every relevant way. There, the plaintiff alleged malpractice by several health care providers. *Id.*, ¶ 10. Two of the doctors sought dismissal on the grounds that the suit was barred under both the three- and five-year limitations in Wis. Stat. § 893.55(1)(a) and (b). *Storm*, 265 Wis. 2d 169, ¶ 11. The plaintiff argued to the supreme court that she had been mentally ill at the time that her action accrued and that the three-year limit in § 893.55(1)(a) was therefore tolled under Wis. Stat. § 893.16 for up to five years, giving her a total of eight years to file suit. *Storm*, 265 Wis. 2d 169, ¶ 12. The doctors contended that the five-year limit in § 893.55(1)(b) barred the plaintiff's claim. *Storm*, 265 Wis. 2d 169, ¶ 11. The supreme court held, as stated above, that the five-year limit in § 893.55(1)(b) applies only to claims brought under the "discovery rule" of that paragraph and not to claims brought under the "injury rule of accrual" in § 893.55(1)(a). *Storm*, 265 Wis. 2d 169, ¶¶ 19, 66. Thus, the plaintiff in *Storm*, if she could demonstrate her disability under the statute, could file her claim up to eight years after the cause accrued. *Id.*, ¶¶ 25, 67. The court applied the continuum of negligent treatment doctrine to calculate the date on which the eight years began to run. *Id.*, ¶ 25 n.11.

¶ 16. Stoeckl seeks to avoid *Storm* by claiming that this case, unlike *Storm*, does not involve the "injury

436

rule of accrual," but Stoeckl misunderstands that term. "Injury rule of accrual" does not, as Stoeckl claims, describe only cases in which the harm occurs long after the negligence that caused it. It simply refers to those cases which are brought within three years of the injury (plus any tolled time); that is, under WIS. STAT. § 893.55(1)(a) rather than (b). *Storm*, 265 Wis. 2d 169, ¶ 2. The reasoning of *Storm* applies to this case, and Forbes' action is timely filed.

¶ 17.   Though our decision in this case is compelled by the statutes and a straightforward application of the continuum of negligent treatment rule, we must address Stoeckl's argument that the law should be otherwise as a matter of public policy. Stoeckl argues that by our application of the continuum of negligent care doctrine, "a mere cry of 'treatment plan' or 'course of treatment' " will resurrect claims that should have been brought long before. We point out that the continuum of negligent care doctrine requires more than a *mere* "course of treatment"; it requires a course of *negligent* treatment. As Forbes points out, were there no such doctrine, a patient who felt that his or her physician had erred would be put into a difficult position:   if the physician proposed to further treat the patient to correct the problem, the patient might well be wise to decline and file suit. Otherwise, even if the physician's further treatment makes the condition worse, the patient may be time-barred from seeking a remedy for the original malpractice. The continuum of negligent care doctrine thus allows the doctor-patient relationship to continue and allows the doctor to try different treatment approaches, without the patient being forced to choose between suing and trying to fix the problem.

*By the Court.*—Order reversed and cause remanded.