**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

ANTHONY J. BOZUNG, JR., individually and as personal representative of the ESTATE OF JO EVELYN BOZUNG,

          Appellant,

          v.

MULTICARE HEALTH SYSTEM, a Washington nonprofit corporation,

          Respondent,

VIRGINIA MASON FRANCISCAN HEALTH, a Washington nonprofit corporation; FRANCISCAN HEALTH SYSTEM, a Washington nonprofit corporation, dba CHI FRANCISCAN HEALTH and ST. JOSEPH MEDICAL CENTER; SETH G. HOLT, M.D., a Washington healthcare provider, JOHN DOE and JANE DOE 1-10, unknown healthcare providers; DIANE REINEMAN, M.D., a Washington healthcare provider; and PETER Y. CHEN, M.D., a Washington healthcare provider,

          Defendants.

No. 86171-9-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Anthony Bozung Jr., individually and as personal representative of the estate of Jo Evelyn Bozung, appeals the trial court's order on summary judgment that dismissed claims of failure to follow the accepted standard of care, informed consent, wrongful death, and corporate negligence against MultiCare Health System (MultiCare). Because the complaint was not filed within the three-year statute of limitations provided in RCW 4.16.350, and no tolling provision applied, we affirm.

I

Jo Evelyn Bozung[1] was 79 years old when she died of lung cancer in December 2019.[2]

Dr. Diane Reineman was Jo Evelyn's primary care physician from 2004 through 2016. Dr. Reineman was located at the Allenmore Primary Care Facility, operated by MultiCare.

As she aged, Jo Evelyn experienced many ailments. By 2012, Jo Evelyn had been diagnosed with chronic airway obstruction, idiopathic urticaria, insomnia, depression, anxiety, dementia, gastritis, hypercholesterolemia, and coronary atherosclerosis. And she had several hospitalizations and emergency room (ER) visits, including treatment for a heart attack. From October 7 to 9, 2013, Jo Evelyn was hospitalized at St. Joseph Medical Center, operated by Franciscan Health Services, for a transient ischemic attack (TIA). Jo Evelyn presented with symptoms of numbness and difficulty ambulating, and she had

---

[1] To avoid confusion, because Jo Evelyn and Anthony Bozung share a last name, we refer to Jo Evelyn by her first name and the appellant by his last name. We intend no disrespect.

[2] Because Bozung was the nonmoving party on summary judgment, the facts are taken in the light most favorable to him. Keck v. Collins, 184 Wn.2d 358, 357 P.3d 1080 (2015).

recently fallen in the bathtub. Providers at St. Joseph performed several diagnostic tests. A computerized tomography (CT) scan showed a 1.3 cm nodule in Jo Evelyn's right upper lung. The Bozungs were not told about the nodule or told to follow up. But, Jo Evelyn's discharge paperwork included the following notation:

> There is a 1.3 cm ovoid, and groundglass opacity within the right upper lobe (for example series 6, image 53).
>
> 1.3 cm groundglass nodule within the right upper lobe. Solitary, purely ground glass nodules measuring greater than 5mm are nonspecific and may represent a benign or malignant process. Referral to the lung nodule clinic may be considered. Follow up chest CT in 3 months is recommended. Should the nodule persist in stable form, annual follow-up chest CT is recommended for a minimum of 3 years. Per Physician.

Jo Evelyn had a follow-up visit with Dr. Reineman after she was released from the hospital. They discussed the TIA and went over "her medications at length." In her progress notes Dr. Reineman noted: "CT did pick up a small 1.3 cm nodule in the right upper lobe of the lung that may need some followup in another 3 months." The Bozungs also consulted cardiologist Dr. Peter Chen. Neither provider mentioned the lung nodule to the Bozungs.

Dr. Reineman retired in May 2017 and Jo Evelyn began seeing Dr. Erin Kallock at a different clinic: MultiCare's James Center Family Practice. During their first visit, Dr. Kallock conducted a detailed interview of Jo Evelyn and went over current symptoms and ailments. Jo Evelyn brought a form from the Department of Licensing (DOL) to the visit needed for Jo Evelyn to get a new driver's license. Jo Evelyn told Dr. Kallock, however, that she didn't really want to drive, was afraid she would get lost, and was scared to drive the new Jeep they owned. A few weeks later, Jo Evelyn underwent

an annual wellness exam with Dr. Kallock. In January 2018, Bozung notified the clinic that they would be changing Jo Evelyn's primary care physician because "they felt that patient's care wasn't met to their satisfaction."

Jo Evelyn began seeing Dr. Jamie Payne on February 7, 2018, at a different clinic: MultiCare Family Medical Center. During the first appointment to establish care, Dr. Payne reviewed Jo Evelyn's past medical history, which included dementia, depression, heart vessel disease, COPD or chronic airway obstruction, history of TIAs, hypercholesterolemia, and tobacco use disorder. Along with regular lab work, Dr. Payne recommended pulmonary function testing and bone density testing. Dr. Payne recommended Jo Evelyn return for a wellness visit in four weeks. When Jo Evelyn returned in March, Dr. Payne again noted Jo Evelyn's former smoking history, but also noted, "[p]atient age is outside of recommended schedule for lung screening."

In April 2018, Jo Evelyn suffered a fall. This was not the first time in recent years that Jo Evelyn had fallen. But on this occasion, Jo Evelyn fractured her left hip and underwent surgery. She was discharged to a long-term recovery center for several months. During her stay, she experienced a urinary tract infection and was re-hospitalized for several days.

Jo Evelyn's last visit with Dr. Payne was on April 22, 2019. That visit was a follow up appointment on Jo Evelyn's hip fracture and included a medication review. Dr. Payne referred Jo Evelyn to physical therapy to work on her gait instability and to gastroenterology for colon cancer screening.

Jo Evelyn was admitted to St. Joseph again on May 31, 2019, after Bozung contacted Dr. Payne explaining the Jo Evelyn had suffered another fall, could not

remember the fall, was sleeping a lot, and had a loss of appetite. Dr. Payne recommended that Bozung take Jo Evelyn to the ER to get evaluated for her lethargy and to rule out a stroke. Jo Evelyn was treated by Dr. Seth Holt. A CT scan of Jo Evelyn's chest found a 3.2 x 2 cm cavitary lesion in the right upper lobe of her lung. Further testing revealed that Jo Evelyn had adenocarcinoma of the lung: a lung cancer that occurs mainly in people who smoke or formerly smoked. Jo Evelyn passed away on December 17, 2019.

On March 1, 2022, Bozung sued MultiCare, Virginia Mason Franciscan Health, Franciscan Health System, Dr. Reineman, and Dr. Chen. He asserted four causes of action including: failure to follow accepted standard of care, failure to comply with statutory informed consent duties, wrongful death and survival claims, and corporate negligence.

MultiCare moved to dismiss Bozung's complaint under CR 12(b)(6) based on the statute of limitations. The trial court granted the motion in part, dismissing Bozung's claims against Dr. Reineman and Dr. Chen, but denied the motion as to defendant MultiCare.

On May 24, 2022, Bozung requested leave to file an amended complaint to add Dr. Payne. The trial court denied his motion. Bozung then moved to amend his complaint to add Dr. Holt of Franciscan Health System, which the trial court granted.

MultiCare moved for summary judgment, renewing its argument that Bozung's claims were barred by the statute of limitations. The trial court granted MultiCare summary judgment dismissal of Bozung's claims. Bozung unsuccessfully moved for reconsideration of the trial court's dismissal order.

Bozung appeals.[3]

II

Summary judgment based on a statute of limitations should be granted only when the pleadings, depositions, interrogatories, admissions, and affidavits in the record demonstrate there is no genuine issue of material fact as to when the statutory period began.  CR 56(c); Olson v. Siverling, 52 Wn. App. 221, 224, 758 P.2d 991 (1988).  The statute of limitations is an affirmative defense; the defendant bears the burden of proof.  Haslund v. City of Seattle, 86 Wn.2d 607, 620-21, 547 P.2d 1221 (1976).  The plaintiff, however, carries the burden of proof if they allege that the statute was tolled and does not bar the claim.  Rivas v. Overlake Hosp. Med. Ctr., 164 Wn.2d 261, 267, 189 P.3d 753 (2008).  Whether a case was filed within the statute of limitations period is normally a question of law to be determined by a judge.  Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 263, 840 P.2d 860 (1992).  Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and the plaintiff fails to make a factual showing sufficient to establish an element essential to his case, summary judgment is warranted.  Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).  We review an order of summary judgment de novo.  Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).

A

RCW 4.16.350(3) contains two provisions for timely commencement of medical malpractice actions—a three-year statute of limitations and a one-year discovery rule:

---

[3] The remaining defendants were separately granted summary judgment, but Bozung has only appealed the order granting MultiCare's motion for summary judgment.

> Any civil action for damages for injury occurring as a result of health care . . . based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his or her representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission.[4]

The three-year limitations period in RCW 4.16.350(3) "begins to run from the date of the act or omission alleged to have caused injury." Gunnier v. Yakima Heart Ctr., Inc., P.S., 134 Wn.2d 854, 864, 953 P.2d 1162 (1998). This means that the three-year period may lapse before injury occurs. This conclusion is "neither absurd nor harsh, as [a] plaintiff still has the alternative limitations period of the one-year discovery rule in which to file suit." Gunnier, 134 Wn.2d at 864.

Bozung's claims were based on the 2013 discovery of the nodule in Jo Evelyn's right lung and the failure of her MultiCare primary care physicians to notify her or follow up on the finding. Bozung's complaint was filed on March 1, 2020.

Bozung argues he presented a genuine issue of material fact that (1) MultiCare breached the standard of care within the statute of limitations, (2) the continuing negligent treatment doctrine applied to toll the commencement of the statute of limitations to the last negligent act, and (3) he filed his claim within the one-year discovery period. We take each argument in turn.

1

Bozung asserts that he raised a genuine issue of material fact that a breach of the standard of care occurred within the limitations period. We disagree.

---

[4] RCW 4.16.350(3) also contains an eight-year statute of repose which was recently held to violate the privileges and immunities clause of the Washington State Constitution, article I, section 12. Bennett v. United States, 2 Wn.3d 430, 435, 539 P.3d 361 (2023). But this portion of the statute is not at issue here.

A claim premised on medical negligence must prove the following:

(a) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances;

(b) Such failure was a proximate cause of the injury complained of.

RCW 7.70.040(1).

In a medical negligence case, an expert must establish the applicable standard of care and prove causation. Behr v. Anderson, 18 Wn. App. 2d 341, 363, 491 P.3d 189 (2021). "'The testimony must be sufficient to establish that the injury-producing situation 'probably' or 'more likely than not' caused the subsequent condition, rather than the accident or injury 'might have,' 'could have,' or 'possibly did' cause the subsequent condition.'" Rounds v. Nellcor Puritan Bennett, Inc., 147 Wn. App. 155, 163, 194 P.3d 274 (2008) (quoting Merriman v. Toothaker, 9 Wn. App. 810, 814, 515 P.2d 509 (1973)). Moreover, the testimony must be based on a reasonable degree of medical certainty. Rounds, 147 Wn. App. at 163. "The expert's opinion must be based on fact and cannot simply be a conclusion or based on an assumption if it is to survive summary judgment." Volk v. DeMeerleer, 187 Wn.2d 241, 277, 386 P.3d 254 (2016). "[S]peculation and conclusory statements will not preclude summary judgment." Volk, 187 Wn.2d at 277.

Further, a "physician with a medical degree is qualified to express an opinion on any sort of medical question, including questions in areas in which the physician is not a specialist, so long as the physician has sufficient expertise to demonstrate familiarity with the procedure or medical problem at issue in the medical malpractice action." Hill v. Sacred Heart Med. Ctr., 143 Wn. App. 438, 447, 177 P.3d 1152 (2008).

Because Jo Evelyn's April 22, 2019 appointment with Dr. Payne is the only appointment within the limitations period, Bozung had to present a genuine issue of material fact that Dr. Payne failed to exercise the proper standard of care at this appointment and that failure was a proximate cause of Jo Evelyn's death in December 2019. RCW 7.70.040(1).

Dr. Hamburg's testimony was as follows:

> It does not appear that any of her primary care physicians reviewed her medical records related to the 2013 lung nodule finding, or otherwise relayed that information to Ms. Bozung. Each of her primary care physicians should have reviewed her medical history and followed up on unresolved issues. Ms. Bozung visited with Dr. Payne on April 22, 2019. That visit included a review of her medical history, a physical exam, and, among other health conditions addressed, a referral to screen for colon cancer. During that visit Dr. Payne did not discuss the lung nodule or provide any followup care or monitoring of the lung nodule. In my opinion her failure to do so fell below the standard of care of a reasonably prudent physician. Each of Ms. Bozung's primary care physicians at MultiCare had a responsibility to follow up on the lung nodule that was discovered in 2013 and that the radiologist had advised to monitor. Failure to do so at each visit—including the April 22, 2019 visit—allowed the cancerous nodule to grow unchecked and Ms. Bozung's treatment options and outlook to diminish. The providers also did not inform Ms. Bozung of the 2013 test results, or that there were treatment and monitoring options (i.e. annual CT scans) that could determine whether the nodule found in 2013 was cancerous. A reasonable and prudent physician would inform a patient about these facts so she could make an informed decision about treatments she could undergo. This is especially true for a patient such as Ms. Bozung who has a high risk of lung cancer due to her personal history. It is my opinion that had the nodule been monitored as the radiologist had recommended, the cancer would have been discovered before it had progressed to stage 4.

Assuming without deciding that Dr. Hamburg's testimony established the requisite standard of care, no reasonable juror could find proximate cause between any act or omission at Jo Evelyn's April 22, 2019 appointment with Dr. Payne and her death that December.

First, when Jo Evelyn established care with Dr. Payne in 2018, Dr. Payne noted that Jo Evelyn had aged out of the "recommended schedule for lung screening." And second, even if Dr. Payne had referred Jo Evelyn for a CT scan on April 22, 2019, there is no testimony that the CT scan would have occurred earlier than the May 31, 2019 CT scan which found lung cancer or that the diagnosis and treatment options would have been materially different. Thus, Dr. Hamburg's testimony merely consisted of speculation and conclusory statements that could not preclude summary judgment. Volk, 187 Wn.2d at 277.

Because Bozung failed to present expert testimony that causally connected any alleged breach on April 22, 2019 to Jo Evelyn's death, the trial court correctly granted summary judgment.

2

Bozung asserts that the continuing negligent treatment doctrine applied and tolled the statute of limitations. We disagree.

A claim of continuing negligent treatment may allow the plaintiff to recover for alleged negligent acts or omissions that occurred more than three years before filing. Caughell v. Grp. Health Co-op. of Puget Sound, 124 Wn.2d 217, 233, 876 P.2d 898 (1994). But "[u]nder the modified continuing-course-of-treatment rule, claimants must allege that the last negligent act, not simply the end of treatment itself, occurred within [three] years of filing suit." Caughell, 124 Wn.2d at 229. To state a claim of continuing negligent treatment, a plaintiff must show "that a series of interrelated negligent acts caused the injury or damages at issue." Caughell, 124 Wn.2d at 233.

A claim of continuing negligent treatment differs slightly on breach and proximate cause. Caughell, 124 Wn.2d at 233. The court in Caughell explained:

> To prove a breach or, in the words of the statute, a failure to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider, a plaintiff must show that a series of interrelated negligent acts occurred during the course of treatment for a medical condition. By "series", we mean two or more negligent acts. By "interrelated", we mean that the negligent acts must be part of a "substantially uninterrupted course of treatment", and must relate to the treatment as a whole . . . Finally, by "treatment" we mean the protocol, procedures, prescriptions, or other medical actions ordered or performed by the health care provider.

124 Wn.2d at 233 (internal citation omitted).

As to proximate cause, "a plaintiff must show that the series of interrelated negligent acts caused the injury or damages at issue." Caughell, 124 Wn.2d at 233. A plaintiff who simply alleges a negligent act followed by nonnegligent treatment will fail to state a claim of continuing negligent treatment; "[t]he malpractice claimant must prove that the subsequent care was negligent in its own right." Caughell, 124 Wn.2d at 234.

In Caughell, the plaintiff alleged damages resulting from her physician's ongoing and continuing prescription of a specific medication over more than 20 years. 124 Wn.2d at 220. The court held that when a physician prescribes a drug to a patient, the physician's duty of care extends throughout the length of the prescription. Caughell, 124 Wn.2d at 235. Because the plaintiff provided sufficient evidence of continuing negligent treatment within the statutory period, summary judgment was improper. Caughell, 124 Wn.2d at 236.

Bozung asserts that each of Jo Evelyn's primary care physicians should have reviewed her medical records, seen the 2013 lung nodule finding, and followed up on it. Bozung cites no authority from Washington State for the proposition that the continuing

-11-

negligent treatment doctrine can be applied to separate providers, operating at separate facilities, and treating a patient for multiple ailments.[5]  Instead, he cites several readily distinguishable out-of-state cases.

For instance, Bozung cites an unpublished Illinois court order, Myles v. Mercy Hospital & Med. Ctr., No. 15 C 8804, 2016 WL 3752983 (N.D. Ill. July 14, 2016), and asserts that the Myles court found a continuous course of treatment.  In Myles, the plaintiff alleged that doctors discovered the patient's stomach cancer in 2010 but failed to disclose the results until 2014 even though the defendants provided a continuous and unbroken course of negligent treatment for the patient's persistent stomach pain.  2016 WL 3752983, at *3-4.  Under Illinois law, the doctrine requires plaintiffs to demonstrate a continuous and unbroken course of negligent treatment and that the treatment was so related as to constitute one continuing wrong.  Myles, 2016 WL 3752983, at *4.  Prior Illinois case law also held that the doctrine did not apply if a provider failed to notify a patient of abnormal tests results, without subsequent affirmative medical treatment.  Myles, 2016 WL 3752983, at *4-5.

The court in Myles was considering a CR 12(b)(6) motion to dismiss.  2016 WL 3752983, at *2.  The court denied the motion because under CR 12(b)(6), the allegations in the complaint must be accepted as true and all reasonable inferences drawn in favor of the plaintiff.  Myles, 2016 WL 3752983, at *5, *7.  However, the court also explained that evidence obtained through discovery may reveal that although the patient received subsequent treatment, "his condition or symptoms did not reasonably

_____

[5] "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."  DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

require [the provider] to request, review, and report [the patient's] comprehensive medical records." Myles, 2016 WL 3752983, at *5.

The remaining out-of-state cases Bozung cites applied continuing negligent treatment to a single provider. Baker v. Farrand, 2011 ME 91, 26 A.3d 806, 809, 816, (2011) (holding that a patient "may bring a single action alleging continuing negligent treatment that arises from two or more related acts or omissions by a single health care provider or practitioner" where at least one act occurred within three years of the claim) (emphasis added); Farley v. Goode, 219 Va. 969, 976, 252 S.E.2d 594 (1979) (applying the doctrine to a dentist who treated patient for four years but failed to diagnose periodontal disease); Forbes v. Stoeckl, 2007 WI App 151, 303 Wis. 2d 425, 427-28, 735 N.W.2d 536 (2007) (applying the doctrine to a dentist who diagnosed the patient and performed multiple treatments over several years, holding "a series of negligent treatments of the same condition gives rise to a single action") (emphasis added).

Bozung failed to establish continuing negligent treatment under Washington law. First, Bozung cannot establish that the alleged negligent acts were part of a "substantially uninterrupted course of treatment." Caughell, 124 Wn.2d at 233. The discovery of the nodule occurred at St. Joseph Medical Center, operated by Franciscan Health Services, not MultiCare. At the time, Jo Evelyn was experiencing a TIA and received care for that diagnosis at St. Joseph.

Between the discovery of the nodule in 2013 to Jo Evelyn's diagnosis of lung cancer in 2019, Jo Evelyn had three different primary care physicians operating at three different primary care clinics. Each time Jo Evelyn changed providers, a new patient assessment occurred where the providers discussed with Jo Evelyn her past medical

-13-

history and her current symptoms and concerns.  These transitions of care were interruptions.

Second, the allegedly negligent acts must relate to the treatment as a whole. Caughell, 124 Wn.2d at 233.  But Jo Evelyn was not being treated by MultiCare for a single medical condition.  Again, at the time of the 2013 CT scan, Jo Evelyn was experiencing stroke-like symptoms and was diagnosed with a TIA.  And Dr. Reineman saw Jo Evelyn for a follow-up appointment based on the TIA that she experienced.

By 2012, Jo Evelyn had been diagnosed with several conditions including chronic airway obstruction, idiopathic urticaria, insomnia, depression, anxiety, dementia, gastritis, hypercholesterolemia, coronary atherosclerosis.  And as the years went by, Jo Evelyn's medical conditions continued to evolve and increase, and she had several hospital visits.  This included: a progression and worsening of dementia, symptoms of headaches and slurred speech, ongoing depression and insomnia, pain associated with gallstones and a gallbladder surgery, and a collapsed lung.  In addition, Jo Evelyn experienced several falls and hip fractures, including a 2018 hip fracture which required surgery and discharge to a long-term recovery center.

Not all of this care was provided by MultiCare.  Jo Evelyn's primary care physicians saw her for many of the above conditions, and, because of the multiple issues Jo Evelyn experienced as she aged, Jo Evelyn's treatment needs changed.

Finally, Bozung failed to establish that the alleged last negligent act—the April 22, 2019 visit with Dr. Payne—was causally connected to Jo Evelyn's death that December.

-14-

We conclude that Bozung failed to raise an issue of material fact that the continuing negligent treatment doctrine applied and thus the statute of limitations was not tolled.

3

Bozung next argues that because genuine issues of material fact exist as to when he discovered the claims against MultiCare, the trial court erred by dismissing the claims as time-barred. We disagree.

The one-year "post-discovery period" begins to run "when the plaintiff 'discovered or reasonably should have discovered all of the essential elements of [his or] her possible cause of action, i.e., duty, breach, causation, damages.'" Zaleck v. Everett Clinic, 60 Wn. App. 107, 110-11, 802 P.2d 826 (1991) (quoting Ohler v. Tacoma Gen. Hosp., 92 Wn.2d 507, 511, 598 P.2d 1358 (1979)). A cause of action will accrue when a plaintiff should have discovered the basis for the cause of action "even if actual discovery did not occur until later." Allen v. State, 118 Wn.2d 753, 759, 826 P.2d 200 (1992) (emphasis added). "To discover a 'breach' in a medical malpractice action, the plaintiff need not have known with certainty that the health care provider was negligent. Instead, the plaintiff need only have had, or should have had, information that the provider was possibly negligent." Zaleck, 60 Wn. App. at 112. "The key consideration under the discovery rule is the factual, as opposed to the legal, basis of the cause of action." Adcox v. Child.'s Orthopedic Hosp. & Med. Ctr., 123 Wn.2d 15, 35, 864 P.2d 921 (1993). Nevertheless, "a question of fact may be determined as a matter of law where reasonable minds can reach only one conclusion." Cho v. City of Seattle, 185 Wn. App. 10, 15, 341 P.3d 309 (2014).

Bozung relies on Winbun v. Moore, 143 Wn.2d 206, 18 P.3d 576 (2001), Lo v. Honda Motor Co., Ltd., 73 Wn. App. 448, 450-51, 869 P.2d 1114 (1994), and Webb v. Neuroeducation, Inc., P.C., 121 Wn. App. 336, 340-41, 88 P.3d 417 (2004).

In Winbun, a patient sued a family physician, an ER physician, and a hospital. 143 Wn.2d at 211. More than three years after her injury, she amended her complaint and added the hospital attending physician. Winbun, 143 Wn.2d at 211. While the patient had requested her medical records, the full records were not provided until after the patient sued, thus depriving the patient of information about the attending physician. Winbun, 143 Wn.2d at 216-17. Our Supreme Court held that substantial evidence supported the jury's determination that the plaintiff did not discover, nor with due diligence reasonably should have discovered, the factual basis of the cause of action against the attending physician. Winbun, 143 Wn.2d at 217.

In Lo, a mother sued Honda Motor Company for injuries to her child after he was born prematurely and with afflictions one month after Lo's Honda suddenly accelerated uncontrollably, thrashing Lo violently. 73 Wn. App. at 450-51, 462. Lo repeatedly asked pediatricians about her son's afflictions and was told "in a small percentage of cases these things just happen." Lo, 73 Wn. App. at 451. When the child was 3-1/2 years old, a doctor concluded that medical negligence more probably than not caused or contributed to his maladies. Lo, 73 Wn. App. at 453. Lo then added the hospital as a defendant in her lawsuit. Lo, 73 Wn. App. at 453-54. In affirming the trial court's decision that Lo's claims against the hospital were not time barred, this court recognized that Lo did not have a duty to inquire specifically about the possibility of medical

malpractice when there was "another facially logical explanation" for the injury.  Lo, 73 Wn. App. at 456, 460.

And in Webb, a mother tried to terminate a father's visitation with his son by filing a claim of sexual abuse.  121 Wn. App. at 340.  The father filed a declaration stating that he believed the mother had coached the son and the son's counselor contributed to the son's fear.  Webb, 121 Wn. App. at 340.  A guardian ad litem (GAL) later exonerated the father and implicated the counselor.  Webb, 121 Wn. App. at 341.  The father then sued the counselor who argued the statute of limitations ran from the time the father expressed mistrust in the counselor.  Webb, 121 Wn. App. at 341-42.  On appeal, the court held that the father did not "have a factual basis for his opinions and grounds for his complaint" until he received the GAL report in 1999, and that any allegations in a prior declaration were "necessarily speculative" as they were "guess[es] at things he clearly could not know."  Webb, 121 Wn. App. at 344.

This case is unlike Winbun, Lo, and Webb.  In June 2020, Bozung's counsel requested an analysis from Dr. Hamburg based on the records Bozung "had on hand." While Dr. Hamburg noted that he would need the complete medical files before making any assertion of medical malpractice, within the records he saw the 2013 finding of the nodule in Jo's upper right lung and noted "that there was a risk of cancer."  And counsel conceded at oral argument that the 2013 records pertaining to the lung nodule were within the records sent to Dr. Hamburg in June 2020.  Wash. Ct. of Appeals oral arg., Bozung v. MultiCare Health Sys., No. 86171-9-I (Feb. 29, 2024) at 21 min., 38 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024021468/?eventID=2024021468.

Despite this knowledge, counsel did not seek more of Jo Evelyn's medical records until July 2021.[6] Bozung's complaint was not filed until March 1, 2022, almost two years after Dr. Hamburg noted the 2013 lung nodule finding indicated a risk of cancer.

The evidence establishes that as of June 2020, Bozung, his attorney, and his medical expert, knew that St. Joseph discovered a nodule in Jo Evelyn's upper right lung in October 2013. At that time, Bozung had a "factual basis for his opinions and grounds for his complaint." Webb, 121 Wn. App. at 344. Bozung had information that the providers were possibly negligent and his cause of action accrued on that date even though actual discovery did not occur until later. Zaleck, 60 Wn. App. at 112; Allen, 118 Wn.2d at 759.

Because Bozung did not file his complaint until March 1, 2022, almost two years later, we conclude that no reasonable juror could find that Bozung's complaint was timely filed and the trial court properly granted summary judgment dismissal.

B

Finally, Bozung asserts that the trial court erred by dismissing claims that were not addressed in MultiCare's motion for summary judgment. MultiCare asserts that it sought dismissal of all claims under ch. 7.70 RCW as outside the statute of limitations

---

[6] While Bozung declared that he tried to obtain Jo Evelyn's medical records in person at her primary care physician's office in 2020, none of the exhibits submitted are dated earlier than November 2021. Similarly, Bozung's counsel declared that his office contacted T-Scan, a medical records retrieval company, on May 26, 2020, however, the attached and referenced exhibit show the communications occurred in July 2021. Counsel conceded at oral argument that this was a typo and the communications were in July 2021. Wash. Ct. of Appeals oral arg., supra, at 22 min., 40 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024021468/?eventID=2024021468.

and that, regardless of Bozung's theory of recovery, RCW 4.16.350 applies with equal force to any claim arising from health care. We agree with MultiCare.

Chapter 7.70 RCW governs "all civil actions and causes of action, whether based on tort, contract, or otherwise, for damages for injury occurring as a result of health care." RCW 7.70.010. RCW 7.70.010 "sweeps broadly" and "modifies procedural and substantive aspects of all civil actions for damages or injury occurring as a result of health care, regardless of how the action is characterized." Branom v. State, 94 Wn. App. 964, 969, 974 P.2d 335 (1999). The statutes of limitations set out in RCW 4.16.350 apply in "[a]ny civil action for damages for injury occurring as a result of health care."

Bozung's complaint asserted: failure to follow the standard of care, RCW 7.70.040; informed consent, RCW 7.70.050;[7] wrongful death and survival, RCW 4.20; and corporate negligence.[8] All of his claims were based on wrongful death resulting from negligent health care. Thus, the statute of limitations set forth in RCW 4.16.350 applied to all four of his claims. See Fast v. Kennewick Pub. Hosp. Dist., 187 Wn.2d 27, 29, 384 P.3d 232 (2016).

---

[7] Informed consent claims under RCW 7.70.050 are limited to "treatment," physicians are not expected to inform patients about conditions of which the physician is not aware. Davies v. MultiCare Health Sys., 199 Wn.2d 608, 625, 510 P.3d 346 (2022). Under a misdiagnosis or failure to diagnose case, the patient may bring a negligence claim if the physician breached the standard of care. See Backlund v. Univ. of Wash., 137 Wn.2d 651, 661 n.2, 975 P.2d 950 (1999).

[8] Corporate negligence claims are based on a hospital's breach of care that proximately causes plaintiff's injury. Douglas v. Freeman, 117 Wn.2d 242, 248, 814, P.2d 1160 (1991). The doctrine imposes on a hospital "a nondelegable duty owed directly to [its] patient, regardless of the details of the doctor-hospital relationship." Pedroza v. Bryant, 101 Wn.2d 226, 229, 677 P.2d 166 (1984). Jo Evelyn received care from MultiCare's outpatient clinics, not a hospital.

We conclude that because the complaint was not filed within the three-year statute of limitations provided in RCW 4.16.350 and no applicable tolling provision applied, dismissal of all claims was proper.

We affirm.

Mann, J.

WE CONCUR:

Díaz, J.

Brennan, J.